ARNEY *v.* STATE.

(*Nashville,* December Term, 1952.)

Opinion filed March 6, 1953.

J. H. WARDEN, of Shelbyville, and C. L. CUMMINGS, of Murfreesboro, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

In January of 1952 Sarah Arney, plaintiff-in-error here, was given a fine and a sentence of six months in the workhouse for violation of the bone dry laws of our State. The Trial Judge suspended execution of the sentence on condition that the defendant not violate the law or conduct herself in a manner inconsistent with good citizenship for the next twelve months. The twelve months' limitation was determined by the fact that the offense committed was a misdemeanor.

In September of 1952 this Trial Judge caused the sheriff to serve on Sarah Arney a notice signed by the judge officially. This notice, after calling attention to the suspended sentence, continued viz.:

"Information has come to me that on September 5, 1952, you were again apprehended for violating the liquor laws of the State, thus violating the conditions upon which your sentence on January 8, 1952 was suspended."

The notice then directed Sarah Arney to appear at a specified time before the Judge at the courthouse in Shelbyville "when and where an investigation will be made as to your alleged conduct on September 5, 1952, and determination will be made as to whether you shall be required to serve the suspended sentence herein referred to."

At the time and place specified in the notice a full hearing was had. Witnesses testified in open Court. They were cross-examined by the attorneys representing Sarah Arney. She testified in her own behalf, and introduced other witnesses to support her contentions. At the conclusion of this hearing the Trial Judge found that the defendant had violated the liquor laws of the State "as alleged in said notice, thus breaching the conditions upon which her sentence of January 8, 1952 was suspended". The order suspending the sentence was thereupon revoked, and she was ordered to serve the original sentence of six months.

 Sarah Arney has appealed from this order of revocation. While she has assigned an error to the effect that the evidence preponderates against the finding of the Court, no argument is made in support of that insistence. Presumably this is because the evidence well war-

rants the findings upon which the Circuit Judge based his order revoking the suspension of sentence.

It is, however, seriously insisted that the Trial Judge was without authority to revoke the order suspending sentence or to have a hearing for that purpose in the absence of formal charges made either by the District Attorney General or some other person.

■ The revocation of an order suspending sentence cannot be had without notice to the defendant and a hearing on the charge stated in the notice. This hearing must be in accord with the procedure prescribed by the statute which authorizes the Trial Judge to revoke the suspension order. *Howe* v. *State, ex rel. Pyne,* 170 Tenn. 571, 576, 98 S. W. (2d) 93.

It is not contended, as indeed it could not be, that this plaintiff-in-error did not receive sufficient notice of the grounds upon which it was to be insisted that she had broken the conditions of the suspension of her sentence. A full hearing upon that issue was had, and the conclusion reached was sustained by the evidence. So, the only question remaining is whether, according to the procedure prescribed by the statute, the Trial Judge may, in the absence of formal charges made by the District Attorney or a third party, revoke the suspension of sentence order. The statute involved is carried at Section 11802.1 et seq. of the Code Supplement.

Section 11802.3 provides that "Whenever it shall come to the attention of the trial judge that any defendant whose sentence has been suspended * * * shall have been guilty of any breach of the laws of this state * * * the trial judge shall have the power in his discretion to cause to be issued under his hand a notice to the defendant * * *, which notice shall contain in brief form the nature of the charges made against such defendant and

shall also require him to appear'' at a day fixed for a hearing upon the charge made in the notice. In case the charge is sustained the Trial Judge is authorized to revoke the suspension of sentence order theretofore granted.

It will be observed that Code Section 11802.3 does not purport to limit or specify the manner in which ''it shall come to the attention of the trial judge'' that the defendant has violated the conditions of his parole, as a condition precedent to the issuance by the Trial Judge of the notice mentioned. Nevertheless, it is insisted by the plaintiff-in-error that the Trial Judge may not issue this notice unless the alleged violation has been brought to his attention by the affidavit or petition of the District Attorney General or some third party. This insistence is based upon the final sentence of Section 11802.3 providing that if it be found that the proceedings for revocation are not made in good faith the Trial Judge may tax the costs ''against the party making such charges against the defendant''.

The above mentioned closing sentence of Section 11802.3 necessarily means that some person other than the Trial Judge may file the charges upon which the Trial Judge issues the notice to the defendant. However, this sentence does not mean that the Trial Judge may not issue the notice if the alleged derelictions of the defendant should come to his attention in some other manner. Nor does the statute purport to so limit the authority of the Trial Judge. The language of its opening sentence is that he may issue the notice ''Whenever it shall come to the attention of the trial judge'' that the defendant has been guilty of violating the conditions upon which his sentence was suspended.

The purpose of the Legislature in the enact-

ment of Section 11802.3 was to provide for the revocation of a suspension of sentence order upon breach by the defendant of the conditions under which the order was entered. The Legislature was not concerned as to the manner in which the attention of the Trial Judge is to be called to the fact that the defendant had breached these conditions. It would, indeed, be illogical to conclude that the authority to revoke the suspension order was intended to be limited to those cases in which the alleged derelictions of the defendant were called to the attention of the Trial Judge in a particular manner. Such a holding would to a large extent destroy the dominant and primary intent of the Legislature in the enactment of Section 11802.3. The derelictions can conceivably come to the attention of the Trial Judge in a number of ways other than by formal affidavit or petition of a third party.

The conclusion which we have reached is consistent with the general view taken of proceedings to revoke an order suspending the sentence of a defendant. Such proceedings are generally regarded as informal, and are generally considered sufficient to satisfy the requirements of due process if the defendant is given reasonable notice of, and opportunity to defend himself against, the charges upon which it is proposed to revoke the order suspending the sentence. See 39 Am. Jur., page 569-570, Sec. 77; and 15 Am. Jur., page 151, Sec. 500, and numerous cases annotated in 132 A. L. R., commencing at page 1248.

Affirmed.