**John H. BARKER, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

March 22, 1972.

Certiorari Denied by Supreme Court
June 5, 1972.

C. Wythe Edwards, Blountville, Tenn., for plaintiff in error.

David M. Pack, Atty. Gen., Charles W. Cherry, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Jr., Dist. Atty. Gen., Kingsport, William R. Mooney, Asst. Atty. Gen., Bristol, for defendant in error.

## OPINION

JOE D. DUNCAN, Special Judge.

The defendant, John H. Barker, was convicted of petit larceny on June 2, 1970, in the Criminal Court of Sullivan County and sentenced to a term of 3 years in the penitentiary. The said sentence at the time was suspended and the defendant was placed on probation for a term of three (3) years.

On May 28, 1971, a warrant was issued by the Criminal Court of Sullivan County, charging that the defendant had violated the terms of his probation in the following respects:

1. Violation of State laws.

2. Leaving the area of supervision and the State without permission or authorization.

3. Consuming intoxicating beverages and entering an establishment where intoxicants are the major item for sale.

A hearing was held by the trial court on October 15 and October 20, 1971, after which the court revoked the defendant's probation, and ordered his original sentence to be put into full force and effect. The defendant appeals from the action of the trial judge in revoking his probationary sentence.

The defendant complains in two assignments of error that (1) there is no competent evidence to support the judgment of the trial court and (2) that the court erred in requiring the defendant to testify over his objection.

The record reflects that the only testimony offered to the court was that of Mr. James Worley, the Probation Officer, and that of the defendant, who was called by the presiding judge over the objection of the defendant. A letter was introduced in evidence (Exhibit #1), admitted by the defendant as having been written by him. According to the witness Worley, the defendant had been transferred to the Missouri authorities under the Interstate Compact and was rightfully under the supervision of the Missouri authorities at the time. The letter was written by the defendant to

his probation officer in Missouri, and in the letter he admitted having been in an Arkansas jail, the letter reading in part as follows:

". . . . . My grandmother paid my way out of that Arkansas jail with the last $500. she had. When I got home I told my grandmother that my freedom would be short lived because I knew when I reported it to my probation officer I would be arrested. . . . . ."

This evidence, if competent, shows that defendant did leave his area of supervision and state, and strongly suggests some difficulties with the law-enforcement officers in Arkansas.

■ Unquestionably the trial judge was within his rights in receiving this letter in evidence. It was in the defendant's own handwriting, and to say that it was error for the trial judge to, in effect, require defendant, over his objection, to admit to the authorship of the letter is not a tenable position.

■ We are of the opinion and so hold that it is legally permissible for the trial court to interview a defendant at a probation revocation hearing.

■ It is the Court's duty at such a hearing to exercise liberal discretion in receiving and hearing evidence. A defendant on probation is obligated to conduct himself in an exemplary fashion, not violate any laws, nor otherwise conduct himself contrary to the rules of good citizenship. He is obligated to fully cooperate and converse with his probation counsellor, freely providing all information requested and to answer all inquiries and questions propounded to him. He would be under an even greater duty to fully cooperate and converse with the court at a revocation hearing. It would undermine the very foundations of the whole concept of probation to permit a probationer to remain silent at such a proceeding. If he has been living up to the rules of good citizenship, as he is bound to do, then his life should be an open book, and there can be no logical or legal reason why he should not be required to freely communicate and converse with the court with regard to those areas under inquiry at the time. Certainly, he has the right to assert his Fifth Amendment privilege and refuse to testify at such a hearing, if he so chooses, but insofar as a simple probation revocation hearing is concerned, this silence on his part cannot be used as a shield to aid him in skirting his duty to fully cooperate with the court in ferreting out the facts in question. Further, it should be pointed out, as will be reflected hereinafter, that the defendant stated to the court that he did not intend to answer further questions, whether his answers would tend to incriminate him or not.

In Arney v. State, 195 Tenn. 57, 256 S.W. 2d 706, our Supreme Court in discussing revocation proceedings stated:

"Such proceedings are generally regarded as informal, and are generally considered sufficient to satisfy the requirements of due process if the defendant is *given reasonable notice of, and opportunity to defend himself against*, the charges upon which it is proposed to revoke the order suspending the sentence." (Emphasis ours.)

In the instant case the defendant was given notice of the charges relied upon by the State, same being three (3) separate alleged violations. The court gave the defendant full opportunity to defend himself, but the defendant, after freely admitting that he had written the letter and stating that he had received permission from the probation authorities to go to Arkansas, chose not to defend himself further. When the court tried to interrogate the defendant about the details of this trip and jail episode, the defendant took refuge in his rights under the Fifth Amendment. He freely chose his own course of action in spite of the fact that the issue had been raised as to his alleged violations, and some

rather concrete facts, by way of the letter, had been presented showing that he had been engaged in activities contrary to the terms of his probation and contrary to the rules of good citizenship. At this stage the defendant blocked the court in its inquiry. On pages 12, 13 of the trial record we find this colloquy between the court and the defendant:

> "THE COURT: You're taking the position then that you will not answer any questions of the Court, whether or not they would intend to incriminate you in another place, or State?
>
> MR. BARKER: Yes, sir. If the Court will permit me to do so, I prefer not to answer any questions.
>
> THE COURT: Well, it might not be a matter of permission, it might be a matter of whether you just elect and refuse to answer.
>
> MR. BARKER: Yes, sir.
>
> THE COURT: Is it your position—you can confer with counsel before you answer, that you will answer no questions concerning—going to whether your probation should be revoked, at all, is that my understanding, is that the position you wish to take?
>
> MR. BARKER: I prefer not to—not answer any more questions."

In Tennessee and elsewhere it is generally recognized that there is a wide distinction between a probation revocation proceeding and a trial where the questions of guilt or innocence are at issue. At such a revocation hearing the strict rules of evidence do not apply.

While by case law, and by statute in Tennessee, probationers facing revocation are entitled to counsel still courts have not gone so far as to grant probationers the full panoply of rights and procedural safeguards. Three different Federal courts have held that illegally seized evidence can be used in a probation revocation hearing, stating that the Fourth Amendment's exclusionary rule cannot be invoked by a probationer at the hearing. See United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2d CA 1970); United States ex rel. Lombardino v. Heyd, 318 F.Supp. 648 (E.D. La. 1970); United States v. Hill, 447 F.2d 817, (7th CA 1971).

In United States ex rel. Sperling, supra, the following reasoning was stated:

> "A parole revocation proceeding is not an adversarial proceeding. * * * A parole revocation proceeding is concerned not only with protecting society, but also, and most importantly, with rehabilitating and restoring to useful lives those placed in the custody of the Parole Board. To apply the exclusionary rule to parole revocation proceedings would tend to obstruct the parole system in accomplishing its remedial purposes."

Thus, if a defendant cannot rely upon his constitutional rights under the Fourth Amendment in a revocation proceeding, then by the same rationale he cannot seek shelter in his Fifth Amendment rights against self-incrimination at such a hearing.

In the case of Bledsoe v. State, 215 Tenn. 553, 387 S.W.2d 811, our Supreme Court propounded the general rule for revocation hearings, quoting from Wharton's Criminal Law and Procedure as follows:

> "In those jurisdictions in which a provision is made for a hearing, the hearing is summary in nature. The defendant is not entitled to the same guarantees as a person who is not convicted and is merely on trial upon an accusation of crime; the court is not bound by the rules of evidence governing such a trial; and it is not necessary to prove beyond a reasonable doubt that the defendant has violated the conditions of the probation order."

The trial judge has a duty in his revocation hearings to adduce suffi-

cient evidence to allow him to make an intelligent judgment. See T.C.A. sec. 40–2907. In reviewing the action of the trial judge under this section, the appellate court must examine the record and, if it finds that the trial court has exercised a conscientious judgment rather than an arbitrary one, his judgment will be affirmed. Bledsoe v. State, supra; Davenport v. State, 214 Tenn. 468, 381 S.W.2d 276; and Finley v. State, 214 Tenn. 149, 378 S.W.2d 169.

In Hooper v. State, 201 Tenn. 156, 297 S.W.2d 78, our Supreme Court said:

"In granting the probation and in suspending the probation the question is whether or not the court is satisfied that its action will subserve the ends of justice in the best interests of both the public and the defendant. And this rests in the sound discretion of the court. And this discretion of course means that the trial judge will and does exercise a conscientious judgment, not an arbitrary action."

We are of the opinion that the cases heretofore cited fully support the court in its conclusion reached in the instant case. We find that the trial judge did not exercise an arbitrary judgment in this case, but rather he made a proper and conscientious judgment, and one based on sufficient evidence, common sense and sound reasoning. We are satisfied that the trial judge did not abuse his discretion by ordering the defendant's suspended sentence revoked.

It might be noted that counsel for the defendant called attention to the court that the defendant's sentence was for not less than 1 year nor more than 2 years, while the record in this cause reflects that his sentence was for 3 years. Since the amount of his sentence is not at issue in this cause, this error, if such it be, is immaterial, and is only mentioned for clarification purposes.

In conclusion we hold that this record contains sufficient evidence to support the judgment of the trial court, and that there was no error committed by the court in requiring the defendant to testify. Accordingly, we find no merit in the defendant's Assignments of Error. The judgment of the trial court is affirmed.

RUSSELL and MITCHELL, JJ., concur.