IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE v. EDDIE LEE TAYLOR

**Direct Appeal from the Circuit Court for Madison County**
**Nos. 98-316, 98-899, 99-79 & 99-80      Roy B. Morgan Jr., Judge**

---

**No. W1999-01803-CCA-R3-CD - Decided July 24, 2000**

---

The defendant, Eddie Lee Taylor, appeals the trial court's revocation of his probation. He contends that the revocation, based upon conduct for which he faces a future trial, violates his Fifth Amendment right against self-incrimination. We affirm the trial court, holding that the defendant's Fifth Amendment rights were not violated.

**Tenn. R. App. R. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIPTON, J., delivered the opinion of the court, in which RILEY and GLENN, JJ., joined.

George Morton Googe, District Public Defender, and Stephen P. Spracher, Assistant Public Defender, for the appellant, Eddie Lee Taylor.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In this appeal as of right, the defendant, Eddie Lee Taylor, contends that the revocation of his probation for conduct for which he faces a future trial violates his Fifth Amendment right against self-incrimination because he is forced to waive his right to remain silent if he is to defend against the revocation. He requests that this court reverse the order revoking probation pending his trial on the aggravated robbery charge. We affirm the trial court.

The defendant pled guilty to theft of property valued over one thousand dollars in case number 98-316. He was sentenced to four years as a Range I offender with six months to be served in jail and the balance in the community corrections program. In case number 98-899, he pled guilty to burglary and theft of property valued over one thousand dollars. He received concurrent two-year sentences as a Range I offender to be served in the community corrections program. These sentences were consecutive to the sentence in 98-316. In cases 99-79 and 99-80, the defendant pled guilty to possession of less than .5 grams of cocaine with the intent to sell. He received consecutive three-

year sentences as a Range I offender with six months to be served in jail and the rest on probation. These sentences were concurrent with the sentences in 98-316 and 98-899. By order, the trial court transferred his supervision in cases 99-79 and 99-80 to the community corrections program because the defendant was already supervised under that program. The trial court revoked his probation in all four cases finding by a preponderance of the evidence that the defendant had committed an aggravated robbery, which violated the law and was inconsistent with good citizenship.

The defendant's community corrections case officer testified as follows: She began supervising the defendant on June 19, 1999. The behavior contract signed by the defendant stated that he had to report any new arrest within one business day. She learned that he had been arrested by reading arrest reports. Although she could not be sure, she believed that the defendant called her from jail a couple of days after his arrest. She admitted that the defendant had kept all appointments, paid all fines and fees, and was looking for a job.

Carolyn Curtis Brand, manager of Star Beauty Supply, testified as follows: The defendant entered her store three times on the morning of August 16, 1999. The third time the defendant entered the store, she was about to return the weekend deposit to the bank. The defendant placed an item on the counter, then pulled out a gun and said, "Check this out." At his instruction, she gave the defendant the money from the deposit bag, which was just over $1400. He then ordered her to the back of the store. He went to the front of the store and took $250 from the cash register. The defendant returned to the back of the store and told her to remove her clothes. When she continued to refuse to remove her clothes, despite his threat to hit her on the head with the gun, the defendant left.

The trial court revoked the defendant's probation finding by a preponderance of the evidence that the defendant had committed unlawful conduct and conduct inconsistent with good citizenship. The defendant did not testify at the revocation hearing. However, he argues that the revocation violates his Fifth Amendment right against self-incrimination because he faced trial for aggravated robbery, the allegation that provided the sole basis for the revocation.

A trial court's revocation of probation or a community corrections sentence will be reversed only if the trial court has abused its discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). In Barker v. State, this court held that the trial court can question the defendant in a revocation hearing. 483 S.W.2d 586, 588 (Tenn. Crim. App. 1972). The defendant can assert his Fifth Amendment right not to incriminate himself, but he cannot use this right as a shield to avoid cooperating with the court in its fact finding mission. Id. This court has rejected the very argument posed by the defendant challenging a revocation based upon conduct which has resulted in additional charges. State v. Carden, 653 S.W.2d 753, 755 (Tenn. Crim. App. 1983); State v. Roberts, 584 S.W.2d 242, 243 (Tenn. Crim. App. 1979). In both cases, the defendant argued that the trial court should have continued the revocation until after the resolution of the charges forming the basis of the violation in order to preserve his Fifth Amendment rights. In Carden, the court observed that the defendant had the opportunity to testify at the revocation hearing and had declined to do so. 653

S.W.2d at 755. Likewise, the defendant in the present case chose not to testify in his own defense against the allegations of aggravated robbery, thereby exercising his Fifth Amendment rights.

"As a practical matter if the defendant's insistence were to prevail, he could prevent the trial of either the revocation proceedings or the disposition of criminal charges pending . . . by simply asserting his right against self-incrimination in either proceeding." Id.; Roberts, 584 S.W.2d at 243 (noting that this presents the classic chicken and egg dilemma). We also noted in Roberts that, even if the defendant were acquitted on the pending charges, the underlying conduct could still form the basis for the revocation. Id.; see Galyon v. State, 189 Tenn. 505, 509, 226 S.W.2d 270, 272 (Tenn. 1949) (holding that evidence insufficient to convict could still support the trial court's finding of conduct inconsistent with good citizenship). The same is true in the present case.

After full consideration of the record, the briefs, and the law governing the issues presented, we affirm the judgment of the trial court.