IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2009

**STATE OF TENNESSEE v. KEVIN REID**

**Direct Appeal from the Circuit Court for Madison County**
**No. 06-351    Roger A. Page, Judge**

**No. W2009-00288-CCA-R3-CD  - Filed March 1, 2010**

The Defendant-Appellant, Kevin Reid, appeals the revocation of his intensive probation by the Circuit Court of Madison County, for which his original four-year term of probation was re-instated after the service of eleven months and twenty-nine days in the county jail. Reid originally pled guilty to attempted aggravated assault, a Class D felony, possession of a deadly weapon with the intent to employ in the commission of a felony, a Class E felony, and reckless endangerment, a Class E felony. For the attempted aggravated assault, Reid was sentenced to four years intensive probation, after thirty days confinement, and assessed a $150 fine. For the possession of a deadly weapon and reckless endangerment convictions, Reid was sentenced to concurrent two year terms of intensive probation, to be served concurrently with the attempted aggravated assault. On appeal, Reid claims the trial court erred by revoking his intensive probation and ordering that he serve 11 months and 29 days in jail. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

George M. Googe, District Public Defender; Paul E. Meyers, Assistant Public Defender, for the Defendant-Appellant, Kevin Reid.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew B. Haskell, Assistant Attorney General; James G. Woodall, District Attorney General; and Jim Thompson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

     **Background**. Reid pled guilty to the above charged offenses on October 31, 2006. Under his guilty pleas, Reid was required to comply with certain special conditions.

Specifically, Reid was required to successfully undergo and complete alcohol and drug treatment as recommended, pay $75 per month minimum payments towards fines and court costs, submit to monthly drug screens, and have no contact with the victim's family or neighborhood. Reid also signed a Probation Order that set forth the conditions of his intensive probation. As relevant to this appeal, the Probation Order required Reid to abide by the following: (1) to obey the laws of the United States; (2) to report all arrests immediately to his probation officer; (3) to work at a lawful occupation; (4) to report to his probation officer as instructed; (5) to pay all required fees; (6) to observe special conditions imposed by the Court; and (7) to not engage in any assaultive, abusive, threatening or intimidating behavior or behave in a manner that poses a threat to others or himself.

A probation violation report was issued on December 15, 2008, by Darlene Millson, Reid's probation officer. Millson recommended that Reid's probation be revoked. The report alleged the following violations:

Rule 1: On or about 12/13/08, Jackson Police [Officers] were called to the Jackson Madison County General Hospital emergency room and spoke with victim, Christopher Lloyd Adams, who advised that he had been assaulted by Kevin Reid. Adams had visible injuries, and his left arm was broken. Adams advised the assault occurred at 57 Ingram and that both he and Reid lived at 57 Ingram.

Rule 2: Offender failed to report his arrest of 12/13/08 to his probation officer within 24 hours, offender was released on a $7,500.00 bond at 1:25 pm on 12/15/08 and failed to report his arrest on that date.

Rule 4: Offender failed to obtain employment or provide proof of employment during the months of September, October, November and December[] 2008.

Rule 6: Offender failed to be present or contact this officer regarding his missing his appointment of 11/10/2008.

Rule 9 & 10: Offender failed to make monthly payments of $75.00 per month on docket # 06-351, even when employed. Offender paid on a Madison Co. General Sessions docket # 01-03-592 (Contributing to the Delinquency of a Minor), offender made a payment to the GS docket on 2/07 and did not make another payment until 11/06/07. Offender finally paid off the GS docket on 3/5/08 and after warnings of a violation warrant, offender made a $50.00 payment on 3/25/08, leaving a balance of $901.50 on his circuit court docket. At offender's last payment made on 8/5/08, the balance was []$750.00.

Rule 14: Offender engaged in assaultive, threatening and intimidating behavior, causing serious injury to Christopher Lloyd Adams, causing him to obtain a broken arm and other injuries on 12/13/08.

The Probation Violation Report also included a section entitled "HISTORY OF SUPERVISION," which states:

Offender has reported on intensive probation supervision since 10/12/06. Offender did report as scheduled, missing 1 to 2 appointments. Offender did not test positive on any of his drug screens. Offender completed Anger Management, but with his temper, it did not help offender. Through out [sic] offender's supervision, he has been difficult to supervise because of his cavalier attitude. Offender was fired from his job at Taco Bell because his anger in responding to [an] unhappy customer, by throwing a bag of [tacos] at the customer and hitting him in the face. Offender's response was that it was "self-defense." Offender was fired from another job at the Speedy Lube on N. Highland, because he walked off from his job, after his employer contacted [Probation and Parole Officer] regarding offender's taking off work and advising his employer that [Probation and Parole Officer] could verify why he took off and [Probation and Parole Officer] could not. Offender was reported by other [employees] as stating, "he could not work for anyone who did not believe him." The employer was advised several hours after offender left, when he went to find offender to assist a customer. Offender has not been able to get a job to date.

**Probation Revocation Hearing**. At the probation revocation hearing, Millson testified that Reid violated his probation by failing to report an arrest in a timely manner. Reid was arrested for aggravated domestic assault on December 13, 2008, and was booked into the Madison County jail. He was released after posting a $750 bond on December 15 at 1:25 p.m. Millson said Reid did not report the arrest until the following day, December 16.

Millson further testified that Reid was also required to show proof of full-time employment as a condition of his intensive probation. He was employed "for quite some time" at a Taco Bell, but he was fired after a dispute with a customer. Millson said a customer became upset with Reid, and Reid responded by throwing a bag of tacos at the customer's head. Reid found new employment at a Speedy Lube; however, he was again fired after "several incidents." In describing the last of these "incidents," Millson said Reid missed a day of work and explained to his supervisor that his absence was due to the death of his grandmother. Reid told his supervisor that Millson could verify his whereabouts. The

supervisor contacted Millson who knew nothing of the absence. Millson was later informed that Reid walked off the job and was no longer permitted to work there.

Millson said Reid did not obtain further employment before his probation was revoked. He did, however, show proof that he was trying to obtain full-time employment. Millson said she received a phone call from an agency about a possible job in Arkansas; however, Millson denied Reid permission to leave Madison County for work.

Millson testified that Reid missed a scheduled appointment on November 10, 2008. The appointment was originally set for November 11, but it was rescheduled because November 11 fell on Veterans' Day. Millson said Reid claimed he was not told of the change, but she said he was informed of the new appointment date. Millson testified that the November 10 appointment was the only appointment Reid ever missed.

Millson also said Reid was "slow in paying" restitution and court costs. He did not begin repayment until 2008 because he was making payments on a past conviction. Millson testified that there was a period when Reid was working, had the ability to make payments, but did not do so. She said, "He was paying very sporadically."

On cross-examination, Millson testified that Reid did not fail a drug test and missed one office visit during the two-year probation period. She said Reid remained unemployed for four months after being fired from Speedy Lube. Reid reported at some point that he had an interview at McDonald's, although she received nothing in writing. Millson testified that during the probation period, Reid completed anger management and also attended a technical school. Regarding Reid's arrest for aggravated domestic assault, Millson stated that "his instructions when he gets on probation is not that he can wait until he's released but that he's supposed to notify me within twenty-four hours of any arrest or question - - being questioned by police."

The revocation hearing was carried over to a second day because the victim of the charged aggravated domestic assault did not show up the first day. At the start of the second day, the victim again was not present. The trial court questioned Reid about the disposition of the charged aggravated domestic assault. Reid informed the trial court that the charge was dismissed. The trial court then stated:

> Well, of course, I heard the revocation matter on Friday, and there's some allegations you failed to report your arrest for your aggravated domestic assault. And there's other minor problems, but they were minor.

And what I'm going to do is find that there's a factual basis upon which you should be revoked, the State has proven you should be revoked by a preponderance of the evidence.

You'll be revoked and reinstated. I am going to start this sentence . . . over and place you back on probation.

The trial court also stated, "I'm going to order you to go back to Pathways for an assessment and complete any recommendations that they give you as far as treatment or anger management." The trial court added that Reid must stay away from the victim of the alleged assault.

The trial court was then informed that the victim, Christopher Lloyd Adams, was present. Adams testified that he lived with Reid at the time of the alleged assault. Adams said around 2:30 p.m. on December 13, 2008, he was about to leave his home when he was confronted by Reid outside. Reid asked, "'What is this about? I heard you say you going to kill me.'" Adams testified that he did not know what Reid was talking about. Adams said Reid walked behind him and when Adams turned around, Reid hit him in the face two or three times. Adams said he grabbed Reid in defense, but fell to the ground and broke his arm. While on the ground, Adams said he was hit again. Reid then got up and kicked Adams "a couple times" before going into the house. Eventually, Adams called his mother, and she gave him a ride to the emergency room. At the emergency room, Adams was told he had a compound fracture to his right forearm. He stated, "They did surgery and installed . . . two plates with screws, and they put it in a cast later." Adams said he did not think Reid intentionally broke his arm. Adams testified that he contacted the police at the emergency room and told them what happened. Adams denied being contacted by the police thereafter. He expected that charges would be pressed against Reid; however, he made no effort to follow up on the matter. Adams said he is currently on probation for forgery and simple possession of cocaine and marijuana.

After Adams testified, the trial court made the following findings:

Based on the evidence before me, as I said, I'm going to find there's a factual basis upon which he should be revoked by a preponderance of the evidence, based on the credibility of the witnesses.

He'll be revoked, reinstated, his sentence to start over after serving eleven months and twenty-nine days in the county jail.

And he must stay away from Christopher Adams and complete any counseling programs as ordered by his probation officer after a Pathways assessment.

The findings of the trial court were reflected in the Probation Revocation Order that was filed on January 23, 2009. Reid filed a timely notice of appeal.

**ANALYSIS**

Reid claims the trial court abused its discretion in revoking his probation. He does not dispute the testimony at the revocation hearing, but he contends the proof does not show that he violated his probation. Reid also asserts the trial court erred by ordering him to serve eleven months and twenty-nine days in jail. The State argues the trial court did not abuse its discretion because Reid violated his probation in several ways. Upon review, we agree with the State.

Tennessee Code Annotated Section 40-35-310 gives the trial court statutory authority to revoke probation whenever it finds that a probationer has violated the conditions of probation. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a probationer is arrested for any breach of the laws of this State or violates the conditions of probation, the trial judge shall have the power to determine whether a violation occurred at a due process hearing, and, if the court finds by a preponderance of the evidence that a probationer is guilty of the alleged violation, the trial court may cause execution of the original judgment. T.C.A. § 40-35-311 (2008). Moreover, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." T.C.A. § 40-35-310 (2008).

The revocation of a suspended sentence is within the sound discretion of the trial judge. Mitchell, 810 S.W.2d at 735 (citing Finley v. State, 378 S.W.2d 169, 172 (Tenn. 1964)). At the probation revocation hearing, the credibility of the witnesses is to be determined by the trial judge. Id. (citing Carver v. State, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978)). The trial judge must receive sufficient evidence to allow him to make an intelligent determination. Id. (citing Barker v. State, 483 S.W.2d 586, 589-90 (Tenn. Crim. App. 1972)).

In determining whether to revoke probation, the trial judge need not find a violation of the terms of probation has occurred beyond a reasonable doubt. The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily.

State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (quoting Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980)).

The judgment of the trial court will not be disturbed on appeal absent an abuse of discretion. Leach, 914 S.W.2d at 106. For an appellate court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).

Once a trial judge has determined a violation of probation has occurred, the trial judge retains discretionary authority to order the defendant to: (1) serve his sentence in incarceration; (2) serve the probationary term, beginning anew; or (3) serve a probationary period that is extended for up to an additional two years. State v. Hunter, 1 S.W.3d 643 (Tenn. 1999). This determination of the proper consequence of the probation violation embodies a separate exercise of discretion. Id. at 647; State v. Reams, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007).

Here, our review is somewhat hindered by the trial court's failure to specify in its findings how Reid violated the terms of his probation. We therefore must decide whether the record contains substantial evidence in support of the trial court's conclusion. See Harkins, 811 S.W.2d at 82.

Upon review of the record, we conclude the trial court did not abuse its discretion in finding that Reid violated his probation. The Probation Violation Report showed that Reid violated Probation Rule 14, which states:

> I will not engage in any assaultive, abusive, threatening or intimidating behavior. Nor will I participate in any criminal street gang related activities as defined by TCA 40-35-121. I will not behave in a manner that poses a threat to others or myself.

Reid's roommate, Adams, testified that Reid hit and kicked him multiple times on December 13, 2008, resulting in a broken arm that required surgery. Reid's brief does not dispute this testimony, asserting only that the resulting charge of aggravated domestic assault was dismissed because of Adams' "blatant disregard for the judicial system." Certainly, based on Adams' testimony, substantial evidence was presented that Reid engaged in "assaultive, abusive, threatening or intimidating behavior." Based on the above evidence, we conclude that Reid's probation was properly revoked by the trial court.

Reid also asserts in a heading to his brief that the trial court erred in "ordering that Appellant serve 11 months and 29 days in the county jail." Reid's brief, however, contains no further argument regarding the post-revocation sentencing; therefore, this issue is waived. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Waiver notwithstanding, we conclude that the record supports the trial court's reinstatement of Reid's four year intensive probation sentence, after the service of eleven months and twenty-nine days confinement in the county jail. Reid is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE