IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 21, 2019 Session

## STATE OF TENNESSEE v. YODELKIS CONTRERAS

**Appeal from the Circuit Court for Bedford County**
**No. 15505     F. Lee Russell, Judge**

_____

### No. M2017-02210-CCA-R3-CD

_____

The defendant, Yodelkis Contreras, appeals from the revocation of the probationary sentence imposed for his 2005 Circuit Court guilty-pleaded conviction of aggravated robbery, claiming that, because the original sentence of probation was illegal, the trial court lacked jurisdiction to revoke his probation and that the delay between the issuance of the original probation violation warrant and the probation revocation hearing violated his constitutional right to a speedy disposition of the violation. We conclude that although the originally-imposed sentence of 10 years' probation was illegal, *see* T.C.A. § 40-35-303(a), the defendant's current sentence of 10 years' confinement is not. Thus, regardless OF whether the trial court possessed jurisdiction to revoke the defendant's probation due to the sentencing illegality, the trial court retained jurisdiction to correct the illegal sentence and impose a sentence of 10 years' confinement. Accordingly, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Yodelkis Contreras.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; W. Michael McCown, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The history of this case is marked by error, confusion, and neglect.

Following the transfer of his case from juvenile court, the defendant, who was 17 at the time of the January 2004 offense, entered an open plea of guilty in October 2004 to one count of aggravated robbery for his role in the theft of cash and payroll checks from the Discount Food Mart in Shelbyville. On January 6, 2005, the Bedford County Circuit Court imposed a sentence of 10 years' probation. Then, on August 16, 2005, the trial court, noting that "a prosecutor in Davidson County" had questioned the legality of the defendant's 10-year probationary sentence, ordered the case set "for review of the legality of the sentence previously imposed." No transcript of any subsequent proceeding was included in the record on appeal, but, in a November 3, 2005 order, the trial court stated that neither party "in the Bedford County case has moved to challenge the legality of the sentence, so that there is nothing currently pending before the Circuit Court of Bedford County." The trial court also stated that "the parties acknowledged in open court that in the event that a revocation proceeding was filed" in the defendant's case, the defendant "would at that time be able to raise a question about the legality of the original Bedford County sentence." The trial court found, based upon the parties' agreement, "that until one of the parties files a motion to set aside the current Bedford County judgment, the trial court does not have jurisdiction to set aside the sentence."

In February 2006, supervision of the defendant's Bedford County sentence of probation was transferred to probation officials in Davidson County. No further action occurred in the defendant's Bedford County case until April 28, 2011, when probation officials in Bedford County filed a probation violation report, alleging that the defendant had violated the terms of his probation by incurring a Davidson County misdemeanor conviction for "attempted altered tag" in September 2007 and by failing to pay restitution or court costs. The report indicated that the defendant's probation in the Davidson County cases had been revoked and reinstated following his testing positive for cocaine in August 2006. A Bedford County probation violation warrant issued on May 5, 2011, based upon these allegations, but the warrant was not immediately served on the defendant.

No further action occurred in the Bedford County case until May 2014, when an amended probation violation report was filed that stated that the defendant "has not reported to probation since 5-4-11. Davidson County closed his case with Bedford County still being active. A violation was filed in Bedford County and has not been served at this time." A Bedford County violation warrant carrying these allegations issued on June 5, 2014, but, again, the warrant was not immediately served on the defendant. Then, on September 19, 2016, the Bedford County Circuit Court issued an order placing the defendant's case "on the retired docket as an 'unapprehended defendant' subject to being reactivated." The order indicated that the capias had not been served on the defendant.

Then, via order dated February 2, 2017, the Bedford County Circuit Court denied the defendant's request for bond and set a hearing on the alleged probation violations for March 2, 2017. Another amended Bedford County probation violation warrant issued on February 14, 2017, adding allegations that the defendant had violated the terms of his probation by garnering a federal drug conviction and by leaving the state without permission. The latter violation was based upon the probation officer's assertion that the defendant's presence in Texas was "evidenced" by his guilty plea in a drug conspiracy case in the Western District of Texas.

At the May 4, 2017 revocation hearing, Probation Officer Lance Fulks testified that the defendant was originally placed on probation for the Bedford County aggravated robbery conviction on January 6, 2005, and that he was later given two two-year sentences of probation for Davidson County convictions of burglary. The two-year Davidson County sentences were aligned concurrently with each other and with the Bedford County sentence. Supervision of the defendant's Bedford County probationary sentence was then transferred to Davidson County.

Mr. Fulks testified that on August 2, 2006, the defendant tested positive for the use of cocaine, and, as a result, his Davidson County probation was revoked and reinstated, but no action was taken to revoke his Bedford County probation. The defendant was then convicted in Davidson County on September 12, 2007, of the misdemeanor offense of "attempted altered tag." Mr. Fulks said that he "believe[d] at one point" that the defendant's Davidson County probation was revoked and the defendant was ordered to serve the balance of the Davidson County sentence in confinement. In any event, the defendant's Davidson County probation was ultimately revoked, and the defendant was ordered to serve his sentence in confinement on April 1, 2011, based upon his 2008 conviction of conspiracy to distribute more than 100 kilograms of a substance containing marijuana in the United States District Court for the Western District of Texas.

As to the defendant's 10-year sentence of probation in this case, Mr. Fulks noted that the defendant still owed $20,179.50 in restitution and that the last report date on record was March 11, 2008. Mr. Fulks's records indicated that on that date, the defendant "was taken into federal custody potentially to be deported at that point." Mr. Fulks agreed that, based upon his federal conviction from Texas, it appeared that the defendant had traveled to Texas without a travel permit.

During cross-examination, Mr. Fulks acknowledged that his file did not contain all the information regarding the defendant's history of reporting. He agreed that the defendant's Davidson County probation was revoked and reinstated in October 2006

-3-

and then revoked "and his sentence was placed into effect on 4/27/2007." Then, on March 11, 2008, the defendant was taken into federal custody inside the Davidson County probation office. At that point, the defendant's probation officer "at the time closed the case for Davidson County and wrote a termination note, stating that he was being taken into federal custody." Mr. Fulks described that officer's action as "odd, because we would normally just change his supervision to detainer status and then the case would be supervised . . . for arrest checks and so on, verifications of being in custody until the case was set to expire." The notes in the defendant's file indicated that the federal government was alerted that the defendant's Davidson County probation was discharged on March 11, 2008. Mr. Fulks agreed that if he "told an offender that they were done with their sentence," he "wouldn't expect them to report" to him after that.

Mr. Fulks said that the notes in the file indicated that the defendant "was re-sentenced again on the Davidson County case" on April 1, 2011. He explained, "Like, he was told to serve his sentence again, because at one point, he was actually, his sentence was suspended after he was told to serve it the first time." He stated that his records indicated that the defendant's federal term of supervised release was transferred to the United States District Court for the Middle District of Tennessee on July 11, 2011.

On May 5, 2011, the first violation warrant for the defendant's Bedford County conviction issued based upon the defendant's 2007 misdemeanor conviction as well as the failure to pay restitution and court costs. An amended violation warrant issued in the case in 2014, which added an allegation that the defendant had violated his probation by failing to report. Another amended violation warrant issued in 2017, adding an allegation that the defendant violated his probation by garnering the federal conviction. None of the warrants were served on the defendant until he came into custody in 2017.

Mr. Fulks admitted that all of the violations, some of which were more than 10 years old at the time of the revocation hearing, alleged in the three warrants had already been adjudicated in relation to the defendant's Davidson County sentences. He also acknowledged that the defendant's file indicated that the defendant's probation had been designated as "discharged" in 2008.

The defendant testified that he had tested positive for cocaine in 2006, that he had admitted the drug use to the Davidson County court, and that he was then reinstated to probation. Thereafter, he pleaded guilty in 2007 to attempting to alter a license tag by using Wite-Out on a temporary tag. He said that he reported both the arrest and the conviction in that case to his probation officer. As to his federal drug conviction, the defendant said that he had never been to Texas and that he was arrested in Nashville and charged as part of the Texas drug conspiracy for actions that he took in Tennessee.

He testified that he was taken into custody in the Davidson County probation office and that his probation officer told him at that point "my State probation was going to be discharged, because I was going into . . . federal custody."

The defendant said that he had never met Mr. Fulks and that Mr. Fulks was not his probation officer at the time he was taken into federal custody. He said that, after his probation officer told him that he was discharged, he did not think he was required to report any more. After he was released from federal custody, he was placed on federal supervised release and that he completed his term of supervision in 2015. The defendant said that he had obtained his Commercial Driver's License ("CDL") and gotten employment as a truck driver making between $1,500 and $2,000 per week. He noted that he was required to complete a background check for his job as a truck driver and that, even after the background check, he had no idea that there were warrants for his arrest. He said that, had he known, he would have turned himself in immediately.

The defendant said that he was arrested in this case after he was pulled over for speeding. He testified that he had two children under the age of five, that his fiancée was pregnant at the time of the hearing, and that he was the sole provider for his family. Nevertheless, the defendant maintained that he could pay $1,000 per month toward his restitution and court costs if reinstated to probation. The defendant said that he had no issues with paying or reporting to probation before he was told that he "was discharged."

During cross-examination, the defendant again acknowledged that he used cocaine in 2006, that he attempted to alter a license tag in 2007, and that he participated in a drug conspiracy in 2007 that resulted in his being taken into federal custody in March 2008. The defendant said that he was released from federal custody in December 2010 and that he began reporting to a federal probation officer in March 2011. He said that he made no attempt to find out if he owed any time on any of his state charges because "they told me I was discharged."

On redirect examination, the defendant said that he had reported to his federal probation officer without issue. The defendant testified that his federal conviction did not include an allegation that he had traveled to Texas, only that he had facilitated the drug conspiracy via a telephone call. He said that he had not committed any crime between 2007 and 2017.

Marlazet Vasquez Molina, the defendant's fiancée, testified that the defendant worked as a landscaper when they first met but that he had since obtained a CDL and become a truck driver. She described the defendant as a hard worker and good provider for their family. She said that the defendant could manage to discharge the amount of restitution owed in a short time if released to go back to work.

-5-

At the conclusion of the hearing, the trial court revoked the defendant's probation on the basis of the 2006 positive drug screen and the 2007 misdemeanor conviction of attempted altering of a license tag. The court refused to give the defendant credit for the time he served in federal custody. The written order revoking the defendant's probation did not cite any particular basis for the revocation and, instead, referred only to "the evidence presented at the hearing."

Following the revocation, the defendant moved the trial court for either a new trial, based upon "the grounds that the verdict was against the weight of the evidence," or to arrest the judgment on "the grounds that the Court was without Jurisdiction of the offense charged in this matter." The hearing on the defendant's motion was continued several times, and the motion was apparently heard on October 20, 2017. No transcript of that proceeding appears in the record on appeal. Via order filed on October 24, 2017, the trial court stated that, although "it is not clear that the relief sought" pursuant to the defendant's request for a new trial "actually applies to a probation violation hearing," the court "decided the motion based on the possibility that this relief was available for such a proceeding." Nevertheless, the court concluded that the defendant "presented no argument or proof that would support the assertion that the [d]efendant is entitled to relief under either" his motion for new trial or his motion for arrest of judgment. The court reiterated that "more than sufficient evidence" supported the revocation of the defendant's probation. The defendant then filed a Notice of Appeal on November 8, 2017.

## I. Timeliness of Appeal

The State first asserts that the defendant's appeal should be dismissed as untimely because the notice of appeal was filed more than 30 days after the May 11, 2017 order revoking his probation. Without citing any authority for the proposition, the State contends that "there is no procedure for a motion for new trial following a revocation order." Then, completely ignoring the fact that the defendant also moved for arrest of judgment pursuant to Tennessee Rule of Criminal Procedure 34, the State recasts the defendant's motion as one to reconsider, which would not toll the time for filing a notice of appeal.

Although we agree with the State that a Rule 33 motion for new trial has no application to the trial court's order revoking the defendant's probation, *see Barker v. State*, 483 S.W.2d 586, 589 (Tenn. Crim. App. 1972) ("In Tennessee and elsewhere it is generally recognized that there is a wide distinction between a probation revocation proceeding and a trial where the questions of guilt or innocence are at issue."), the defendant's timely motion for arrest of judgment, which motion challenged the trial

-6-

court's jurisdiction over the charged violations, effectively continued the trial court's jurisdiction until 30 days after it disposed of that motion via its October 24, 2017 order. Tenn. R. App. P. 4(c); *see also State v. Thomas Coggins*, No. M2008-00104-CCA-R3-CD (Tenn. Crim. App., Nashville, Feb. 25, 2009). As a result, the November 8, 2017 notice of appeal was timely.

## *II. Illegal Sentence Claim*

In addition to the State's claim that the defendant's appeal is untimely, the State asserts that the defendant waived his challenge to the legality of the original sentence by failing to present that claim in the trial court.

As a general rule, "[i]ssues raised for the first time on appeal are considered waived." *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996). As the State correctly points out, the defendant did not challenge the legality of the original 10-year probationary sentence prior to or at the revocation hearing. We do not know whether he challenged the propriety of the original sentence at the hearing on the motion to arrest judgment because the transcript of that proceeding has not been included in the record on appeal, but we do know that the trial court did not address any such claim in its order denying relief. The defendant claims that because the original 10-year probationary sentence was illegal, the judgment was "void from the onset." At oral argument, the State asserted that even if the original sentence was illegal, the defendant's current sentence of 10 years' incarceration does not contravene any statute, and, as a result, the defendant is not entitled to relief.

Despite the defendant's failure to raise the issue below, there can be no doubt that the original 10-year probationary sentence was imposed "in direct contravention of the express provisions of [an applicable statute], and consequently [is] a nullity." *State v. Brown*, 479 S.W.3d 200, 208 (Tenn. 2015) (citations and internal quotation marks omitted) (alterations in *Brown*). Code section 40-35-303 provides:

> A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, *no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-213(a)(2), § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005.*

T.C.A. § 40-35-303(a) (emphasis added). In this case, the defendant was convicted of aggravated robbery, a violation of Code section 39-13-402, and, in consequence, was

-7-

statutorily ineligible for probation despite having received a sentence of 10 years or less. Indeed, the defendant was not eligible for any form of alternative sentencing. *Id.* § 40-36-106(a)(1)(B) (excluding from eligibility for community corrections placement those offenders convicted of felony offenses "involving crimes against the person as provided in title 39, chapter 13, parts 1-5").

Regardless of whether the trial court could "revoke" a sentence of probation that it lacked the jurisdiction to impose in the first place, as the defendant contends, the trial court maintained jurisdiction to correct the defendant's original sentence at any time before its expiration because it was illegal. *See Brown*, 479 S.W.3d at 206 (noting "an exception to this general rule" that the trial court may not alter a judgment once it becomes final and recognizing "that 'a trial judge may correct an illegal, as opposed to a merely erroneous, sentence at any time, even if it has become final'" (quoting *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978)).[1] Following the revocation of the defendant's probation, the trial court ordered that the defendant serve the balance of his 10-year sentence in confinement; a sentence of 10 years' confinement is statutorily available for a conviction of aggravated robbery.[2] Thus, the trial court's action in revoking the defendant's probation and ordering that he serve his sentence in confinement had the effect of remedying the previous sentencing illegality. Because the defendant's current sentence is not illegal, nothing more is required. Thus, regardless of whether the claim was waived for failure to present it below, the defendant is not entitled to relief.

We note that the defendant's is not a case where the original sentence illegality would permit the defendant to withdraw his original guilty plea. *See* Tenn. R. Crim. P. 36.1(c). Although the defendant pleaded guilty to aggravated robbery, his plea was "open" and without any sentence having been promised in exchanged for his plea. In consequence, he cannot establish that, but for the illegal sentence, he would not have pleaded guilty.

### III. Speedy Trial

As it did with his illegal sentence claim, the State contends that the defendant waived our consideration of his claimed speedy trial violation by failing to

---

[1]   Indeed, the trial court should have corrected the illegality when it was first brought to the court's attention in 2005 instead of erroneously concluding that it lacked the authority to do so.

[2]   At this juncture, we note that even if we granted the defendant's request that the judgment of the trial court "be reversed," the end result would not be the defendant's being returned to probation for the duration of his sentence. At best, the result would be a remand to the trial court for a new sentencing hearing at which no form of alternative sentencing would be available for the defendant's conviction.

present the issue in the trial court. The defendant asserts that "this issue has not been waived because it is a constitutional right guaranteed by the State and Federal Constitution." As noted above, generally, this court will treat as waived those issues raised for the first time on appeal, including some issues of constitutional dimension.

The delay between the filing of the first probation violation warrant in May 2011 and the defendant's arrest in February 2017 is not insignificant, and "a probation revocation proceeding is a continuation of the criminal prosecution, and as such, the defendant in the instant case has a constitutional right to a speedy trial on 'the offense of violation of the terms of probation.'" *Allen v. State*, 505 S.W.2d 715, 719 (Tenn. 1974). That being said, the defendant did not, at any point, demand a speedy trial, did not move for dismissal based upon the deprivation of a speedy trial, and did not present the denial of a speedy trial as grounds for relief in his post-trial motion. *See State v. Berry*, 141 S.W.3d 549, 568 (Tenn. 2004). The defendant's failure to raise the issue in the court below deprived the trial court of the opportunity to make the fact-intensive findings necessary to a determination of whether he was entitled to relief on this issue. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (developing a "balancing test" that "necessarily compels courts to approach speedy trial cases on an ad hoc basis"). In consequence, he has waived our review of the issue. *See State v. Malcolm J. Coble*, W2012-01692-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Jackson, June 28, 2013) ("Thus, because the Defendant failed to assert his right to a speedy trial in a pretrial motion or any other time during the proceedings in the trial court, precluding the trial court from making findings or the State from presenting a defense on the issue, he has waived review of the speedy trial issue."); *State v. Adrian Ann Crain*, W2010-00274-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Nashville, Feb. 17, 2011) ("If the defendant had a viable speedy trial contention, she should have argued it before her probation revocation hearing, and in the event of an adverse ruling, preserved the issue for argument on appeal.").

Furthermore, the record indicates that at least some of the delay is attributable to the defendant's having been incarcerated elsewhere on other charges. Finally, reversal of the revocation—the remedy obtained by the defendant in *Allen*—would not, ultimately, avail the defendant of the relief he desires, which is, presumably, a return to probationary status because his conviction of aggravated robbery is statutorily ineligible for probation.

*III. Conclusion*

Based upon the foregoing analysis, we affirm the judgment of the trial court ordering the defendant to serve his 10-year sentence in confinement.

_____
JAMES CURWOOD WITT, JR., JUDGE