IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 22, 2024

## STATE OF TENNESSEE v. CHRISTOPHER PAUL DRAKE

**Appeal from the Circuit Court for Blount County**
**No. C-22436       Tammy M. Harrington, Judge**

_____

### No. E2024-00165-CCA-R3-CD

_____

The Defendant, Christopher Paul Drake, pled guilty to the offenses of attempted aggravated sexual exploitation of a minor and attempted sexual exploitation of a minor. The trial court imposed an effective sentence of eight years and placed the Defendant on probation after service of six months in custody. Thereafter, the Defendant was alleged to have committed a "zero tolerance" violation of his probation by being discharged from an outpatient sex offender treatment program. Following a hearing, the trial court revoked his suspended sentences in full. On appeal, the Defendant argues that the trial court abused its discretion when it ordered the sentences into execution. He also asserts that the trial court erred in admitting the treatment provider's Notice of Termination despite the provider's absence from the hearing. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which JILL BARTEE AYERS and KYLE A. HIXSON, JJ., joined.

Dillon E. Zinser, Knoxville, Tennessee, for the appellant, Christopher Paul Drake.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Ryan K. Desmond, District Attorney General; and Ashley J. Salem, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

On April 13, 2020, the Defendant pled guilty out of range as a Range II, multiple offender, to the offenses of attempted aggravated sexual exploitation of a minor as a Class C felony offense and attempted sexual exploitation of a minor as a Class D felony offense. The trial court imposed an effective sentence of eight years and placed the Defendant on probation supervised by the Tennessee Department of Correction ("the Department") after service of six months in custody. As a condition of probation, the trial court ordered the Defendant to participate in an outpatient sex offender treatment program.

On July 17, 2023, the Department filed a probation violation report alleging that the Defendant had committed a "zero tolerance" violation of his probation by being terminated from the sex offender treatment program. The Department further explained that the Defendant had been unwilling to work toward personal treatment goals and had refused to take, and was unable to pass, a polygraph within a reasonable amount of time. The trial court held a revocation hearing on January 12, 2024.

At the hearing, the Defendant stipulated that he violated the conditions of his probation due to his discharge from treatment, and he requested that the trial court determine the disposition, or consequence, of that violation. In so doing, the Defendant objected to the trial court's consideration of a two-page Notice of Termination ("Notice") from the treatment provider, Karen Goins, who was not present for the hearing. In response, the State asserted that the Notice was reliable hearsay that could be considered in a violation hearing. The trial court later admitted the Notice into evidence as reliable hearsay, finding that the provider was a licensed professional who sent the Notice to the Department as a part of the Defendant's treatment.

The State called Lynnea Pinkham, a community supervision officer with the Department, as its only witness. Officer Pinkham testified that she was the manager of the specialized unit responsible for supervising the entire sex offender registry. She stated she had been in that role since April of 2023 and had supervised the Defendant since that time. The officer further testified that the Defendant had been enrolled in a sex offender treatment program, which was a recommendation stemming from a psychosexual assessment performed by an evaluator from the Tennessee Sex Offender Treatment Board. The treatment program included, among other things, regular polygraph examinations and participation in weekly group therapy sessions.

2

Officer Pinkham received monthly reports from the Defendant's treatment provider, including the May 23, 2023, Notice that removed the Defendant from outpatient sex offender treatment. She testified that she received a report in February 2023 about the Defendant not being amenable to rehabilitation and failing to complete the required polygraphs. When the officer confronted the Defendant about the issues, he raised his voice and became hostile, confrontational, and belligerent. Both before and after receiving the Notice, she and other probation officers had "frank discussions" with the Defendant to encourage him to become more amenable to treatment in the intervening months.

Officer Pinkham also testified that the Defendant admitted that he was not truthful on the polygraph examinations. When she confronted him specifically about his previous offenses and current sexual conduct, he responded that he had not been truthful and became hostile and aggressive. Based on her thirteen months of attempting to supervise him, the officer opined that the Defendant was not amenable to probation supervision.

For his part, the Defendant called two witnesses: his mother, who testified that the Defendant would be able to live with her if reinstated to probation, and his uncle, who testified that the Defendant would have immediate employment with him if reinstated to probation.

Following the hearing, the trial court fully revoked the Defendant's suspended sentences and ordered that he serve the balance in the Tennessee Department of Correction. In doing so, the trial court credited Officer Pinkham's testimony about her interaction with the Defendant, particularly the Defendant's admission that he was untruthful in his polygraphs. The trial court also found that the Defendant was not amenable to treatment. Specifically about the Defendant's underlying offenses, the trial court found that amenability to treatment was "unbelievably important because that is the only gauge and the only assurance of hopefully preventing any future issues." The trial court also found that the Defendant had several opportunities to attend treatment but was unsuccessful.

The trial court's revocation order was entered on January 12, 2024. The Defendant filed a timely notice of appeal twenty days later.

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The principal issue in this case is whether the trial court acted within its discretion in fully revoking the Defendant's suspended sentence. We review this issue for

3

an "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). However, if the trial court does not make such findings, then this court "may conduct a de novo review if the record is sufficiently developed for the court to do so, or [we] may remand the case to the trial court to make such findings." *Id.* In this case, because the Defendant stipulated to the violation, and the trial court placed sufficient findings on the record to support its decision regarding the consequence determination, we review the decision for an abuse of discretion.

## ANALYSIS

When a trial court imposes a sentence for criminal conduct, the court may suspend the sentence for an eligible defendant and place that defendant on probation. *See* Tenn. Code Ann. §§ 40-35-103; 40-35-303(b). The trial court may also "require that the defendant comply with various conditions of probation where those conditions are suitable to facilitate rehabilitation or to protect the safety of the community and individuals in it." *State v. Rand*, 696 S.W.3d 98, 102-03 (Tenn. Crim. App. 2024) (citations omitted); *see also* Tenn. Code Ann. § 40-28-302(1).

As long as a defendant complies with the conditions of the suspended sentence, the defendant will remain on probation until the sentence expires. *See State v. Taylor*, 992 S.W.2d 941, 944-45 (Tenn. 1999). However, if a defendant violates a condition of probation, then the trial court may address the violation as it "may deem right and proper under the evidence," subject to various statutory restrictions. Tenn. Code Ann. § 40-35-311(d)(1) (Supp. 2021). As such, the nature of a probation revocation proceeding involves a two-step process with "two distinct discretionary decisions." *Dagnan*, 641 S.W.3d at 757. As our supreme court confirmed in *Dagnan*, the first step is to determine whether the defendant has violated a condition of probation, and the second is to determine the appropriate consequence of that violation. *Id.*

### A.    THE VIOLATION DETERMINATION

As to the first step, a trial court cannot find a violation of the conditions of probation unless the record supports that finding by a preponderance of the evidence. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Effective July 1, 2021, the General Assembly amended the statutes relating to violations of probation to institute a system of graduated sanctions for certain types of violations. In so

4

doing, the legislature created two categories of violations, technical and non-technical violations, and it assigned different possible consequences to each category. *See* 2021 Tenn. Pub. Acts, ch. 409, §§ 24, 25 (eff. July 1, 2021); *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App. Dec. 16, 2022) (citing Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2021)), *no perm. app. filed*.

When any probationer commits a non-technical violation, a trial court's authority to impose a consequence for that violation is broad. Indeed, the trial court may fully revoke a suspended sentence for a non-technical violation, even if the probationer has not previously violated the terms and conditions of the suspended sentence. *See generally* Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2021); *Rand*, 696 S.W.3d at 103.

As the term is currently defined, a "technical violation" means "an act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." Tenn. Code Ann. § 40-35-311(g). In this case, the Defendant admitted that he violated his probation by being discharged from the sex offender treatment program. He also concedes that this conduct constituted a zero-tolerance violation as defined by the Department's community supervision sanction matrix. As such, we conclude that the record supports a finding that the Defendant committed a non-technical violation of probation. *See, e.g.*, *State v. Thompson*, No. M2023-01424-CCA-R3-CD, 2024 WL 3549189, at *3 (Tenn. Crim. App. July 26, 2024) (finding substantial evidence of a violation where the defendant did not contest the fact of a non-technical violation of probation), *no perm. app. filed*.

## B.  THE CONSEQUENCE DETERMINATION

As to the second step of the probation revocation proceeding, "the consequence determination essentially examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." *State v. Robinson*, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Feb. 8, 2023). As the supreme court observed in *Dagnan*, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. *See Dagnan*, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to correction may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation. Tenn. Code

Ann. § 40-35-102(3)(C); *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at \*5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*. "A trial court may also consider whether the violation shows that the defendant is a danger to the community or individuals in it." *Rand*, 696 S.W.3d at 106 (citing Tenn. Code Ann. § 40-28-302(1)).

In this case, the Defendant makes two arguments as to the consequence determination. First, he argues that the trial court improperly considered the Notice of Termination without the author of the notice being present in court to testify. He also takes issue with the trial court failing to consider alternatives to incarceration. We address each of these issues in turn.

### 1. Admission of Notice of Termination

The Defendant first argues that the trial court improperly considered the treatment provider's Notice of Termination as reliable hearsay. More specifically, the Defendant asserts that, even if the Notice is "reliable," the treatment provider did not appear as a witness, and the State failed to establish good cause for her absence. In response, the State contends that the trial court implicitly found good cause to admit the Notice but that any error was harmless. Although the record does not support a finding of good cause for admission of the Notice, we agree with the State that any error was harmless.

It is well-established that "the full panoply of rights due a defendant" in a criminal prosecution does not apply to probation revocations. *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993). "However, since a probationer's conditional freedom from incarceration is at risk, he must be afforded due process in the revocation proceeding." *Id.*

To that end, this court has long recognized that "[t]he strict rules of evidence do not apply in a probation revocation hearing." *Barker v. State*, 483 S.W.2d 586, 589 (Tenn. Crim. App. 1972); *State v. Booker*, No. E2023-00435-CCA-R3-CD, 2024 WL 1928840, at \*3 (Tenn. Crim. App. May 2, 2024), *no perm. app. filed*. Specifically with respect to a probationer's right to cross-examine and confront witnesses against him, "a due process standard applies in determining the admissibility of a statement made by an out-of-court declarant at a probation violation proceeding." *State v. Walker*, 307 S.W.3d 260, 265 (Tenn. Crim. App. 2009). This due process standard allows for the admission of hearsay when (1) the trial court makes a finding that there is "good cause" to justify the denial of the defendant's right to confront and cross-examine adverse witnesses; (2) the information contained in the evidence is reliable; and (3) the opposing party has a fair opportunity to rebut the evidence. *See Wade*, 863 S.W.2d at 410; *see also, e.g., State v. Harris*, No.

6

W2021-00229-CCA-R3-CD, 2022 WL 522888, at *3 (Tenn. Crim. App. Feb. 22, 2022), *no perm. app. filed.*

Generally speaking, "good cause" for failing to call a witness *may* exist where it is "cost prohibitive" to call an out-of-state witness or where the witness would have to travel a prohibitively long distance to attend the hearing. *See State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997); *State v. Ricker*, 875 S.W.2d 687, 688 (Tenn. Crim. App. 1994). However, "good cause" does not exist where the absence of the witness is unexplained. *See, e.g.*, *State v. Littrell*, No. W2022-01433-CCA-R3-CD, 2023 WL 6548679, at *3 (Tenn. Crim. App. Oct. 9, 2023), *no perm. app. filed.* It likely also does not exist where the State fails to issue a subpoena to the witness at the last known address. *See Harris*, 2022 WL 522888, at *4; *State v. Washington*, No. W2016-00669-CCA-R3-CD, 2017 WL 3895153, at *3 (Tenn. Crim. App. Sept. 5, 2017), *no perm. app. filed*.

In this case, the trial court found that the Notice was "reliable," but it made no specific finding of good cause to justify denying the Defendant's right to confront and cross-examine Ms. Goins, the Notice's author. Although the State argues on appeal that the trial court implicitly found good cause to excuse Ms. Goins's appearance at the hearing, we respectfully disagree.

Even if a trial court could implicitly find good cause to excuse a witness's absence, *but see Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (requiring the court to "specifically find[] good cause for not allowing confrontation"); *Wade*, 863 S.W.2d at 409 (noting absence of a "specific finding by the trial court of 'good cause'"), no proof in the record would support such a finding. Although the State's counsel said that a subpoena had been issued, she did not further represent that the subpoena was properly served, and no return appears in the record. *See* Tenn. R. Crim. P. 17(f), (g). Although defense counsel started to proffer his understanding of the situation, the State's counsel objected, said that she had not spoken with the witness, and offered no further explanation of why Ms. Goins was absent. As such, the trial court had no basis for finding that good cause existed to deny the Defendant his right to cross-examine and confront witnesses against him.

The admission of the Notice, however, was harmless beyond a reasonable doubt. Tenn. R. App. P. 36(b); *Littrell*, 2023 WL 6548679, at *3. Because the Defendant admitted that he was discharged from sex offender treatment, the Notice was not used to establish that he violated the terms of his probation. Moreover, although the Notice discussed the Defendant's failures to engage in treatment, the probation officer testified about her knowledge of these failures from her own personal interactions with the Defendant. In these interactions, the Defendant admitted that he was dishonest about both his prior

7

offenses and his current sexual behavior. Apart from the Defendant's discharge from treatment, the probation officer did not testify about the contents of the Notice.

Moreover, although the trial court said it reviewed the Notice, it minimized its importance by noting that the Notice "reiterates that [the Defendant] was unsuccessfully terminated from treatment." The court also observed that the probation officer's testimony established that the Defendant's treatment was unsuccessful because he was untruthful, though the Notice provided additional details. In deciding to revoke the Defendant's suspended sentence, the court specifically credited the probation officer's testimony, including her opinion that the Defendant was not suitable for probation supervision. Respectfully, nothing in the record demonstrates that the Notice affected either the violation or the consequence decisions in the least. The Defendant is not entitled to relief.

### 2.    Factors Considered by the Trial Court

The Defendant also argues that the trial court abused its discretion in fully revoking his sentences as a consequence of the probation violation. He asserts that this violation was his "first violation" and that the court should have considered alternatives to incarceration. In response, the State argues that the trial court properly exercised its discretion in imposing full confinement after it determined that the Defendant was no longer amenable to treatment. We agree with the State.

From our review of the record, the trial court relied upon two reasons in evaluating the proper consequence of the violation. First, the court considered that the Defendant was a danger to the community without sex offender treatment, noting that amenability to treatment is crucial as it provides the "only assurance of hopefully preventing any future issues." This was a proper consideration and one expressly authorized by statute. The Public Safety Act of 2016 *requires* trial courts to consider full revocation when the probationer's violation constitutes "a significant risk" to the community at large that "cannot be appropriately managed in the community." Tenn. Code Ann. § 40-28-302. Indeed, the trial court may only consider sanctions other than revocation when interventions exist that "may assist the offender to remain compliant and crime-free in the community." *Id.* In this way, the consequence determination "is not merely focused on the probationer's rehabilitative needs alone." *State v. Banning*, No. E2022-00188-CCA-R3-CD, 2022 WL 10225186, at *5 (Tenn. Crim. App. Oct. 18, 2022), *no perm. app. filed*. Instead, the court must also consider whether those needs "can be effectively addressed *in the community* rather than in custody." *Id.* (emphasis in original); *State v. Tobin*, No. E2022-00604-CCA-R3-CD, 2023 WL 176108, at *5 (Tenn. Crim. App. Jan. 9, 2023), *no*

8

*perm. app. filed*.  The trial court appropriately considered that the Defendant's failure to participate in treatment represented an unreasonable risk to community safety.

Second, the trial court considered the history of the Defendant's participation in treatment in assessing his amenability to future rehabilitation.  This was also a proper consideration.  *Cf. State v. Everett*, No. E2022-00189-CCA-R3-CD, 2022 WL 16643628, at *4 (Tenn. Crim. App. Nov. 3, 2022) (citation omitted), *no perm. app. filed*.  The trial court observed that the Defendant was discharged from treatment for failing to participate in any meaningful way and being dishonest and dismissive regarding the facts of his offenses and his current behaviors.  The court noted the "many attempts made to try to keep [the Defendant] in the community and try to keep [him] engaged in treatment."  It also observed that the Defendant was not discharged until "attempt after attempt after attempt" had been made to keep him in treatment.  The Defendant's repeated failures to engage with the required treatment show that rehabilitation is not "reasonably feasible."  *State v. Penny*, No. W2023-00912-CCA-R3-CD, 2024 WL 1803264, at *4 (Tenn. Crim. App. Apr. 25, 2024) ("[R]ehabilitative efforts cannot be 'reasonably feasible' when the defendant does not voluntarily comply with those efforts.  Thus, when a trial court weighs whether to continue rehabilitative efforts, it may certainly consider whether the defendant will voluntarily comply with the court's orders."), *perm. app. denied* (Tenn. Oct. 25, 2024).  We conclude that the trial court acted within its discretion in deciding that a full revocation of the Defendant's suspended sentences was the appropriate consequence of his violation.

In pressing his argument to the contrary, the Defendant argues that this was his "first violation" of probation and that the trial court should have considered other alternatives to incarceration when deciding upon an appropriate consequence of the violation.  Three responses are in order.  First, because the Defendant's violation was a non-technical violation of probation, the trial court had broad authority to decide the appropriate consequence, including revoking the suspended sentences without prior violations of probation.  *See Rand*, 696 S.W.3d at 104 (recognizing that a defendant who commits a non-technical violation of probation "may be subject to a full revocation of the suspended sentence even without prior violations or revocations").  As we have emphasized in more than a hundred cases, and do so again, "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing."  *State v. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999).

Second, to denominate the Defendant's conduct as a "first violation" respectfully misses the mark.  We have previously observed that the purpose of the consequence determination is to analyze, through the lens of a defendant's post-judgment conduct,

9

whether community-based efforts can still be effective for rehabilitation and community safety. *See Tobin*, 2023 WL 176108, at *5. In this case, the Defendant's community supervision officer testified about how he repeatedly failed to meet the sex offender treatment program's requirements. Despite these failures, his probation officer and treatment staff opted for additional treatment attempts rather than seek formal revocation. A trial court is not obliged to persist with ineffective community-based rehabilitation simply because no prior revocation proceeding has occurred.

Finally, our review of the record shows that, contrary to the Defendant's argument, the trial court did consider alternatives to incarceration. In reviewing the appropriate consequence of the violation, the court specifically considered the Defendant's "attempt at serving these sentences in the community." Nevertheless, given the multiple attempts to keep the Defendant in treatment, the court concluded that it did not "have another alternative" to a full revocation. We agree and conclude that the trial court acted within its discretion in fully revoking the Defendant's suspended sentence.

## CONCLUSION

In summary, we hold that the record supports the trial court's finding that the Defendant committed a non-technical violation of his probation. We also hold that the trial court acted within its discretion to fully revoke the Defendant's suspended sentences as a consequence of that violation. Accordingly, we respectfully affirm the judgments of the trial court.

_____
TOM GREENHOLTZ, JUDGE