IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 23, 2025 Session

## STATE OF TENNESSEE v. JAY JUNIOR HEIFNER

**Appeal from the Criminal Court for Knox County**
**No. 120264   Steven W. Sword, Judge**

_____

### No. E2024-01517-CCA-R3-CD

_____

Defendant, Jay Junior Heifner, appeals the Knox County Criminal Court's revocation of the three-year term of probation imposed for his 2021 guilty-pleaded conviction of theft, arguing that the trial court was without jurisdiction to revoke his probation because the violation warrant was void and that the trial court erred by ordering that he serve the balance of his sentence in confinement. We conclude that because the affidavit in support of the violation warrant failed to comply with the statutory and rule-based requirements, the affidavit was void, the violation warrant was void, and the ensuing revocation proceeding was void. Accordingly, the judgment of the trial court is reversed, and the case is remanded to the trial court to determine whether, in the absence of a validly issued probation violation warrant, Defendant's term of probation has expired.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which J. ROSS DYER, and JILL BARTEE AYERS, JJ., joined.

James M. Crain, Knoxville, Tennessee, for the appellant, Jay Junior Heifner.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Charme P. Allen, District Attorney General; and Randall Kilby, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Defendant pleaded guilty to theft in exchange for a three-year sentence to be served on supervised probation. This case concerns the trial court's subsequent revocation of Defendant's probation.

## Factual and Procedural Background

Defendant was charged by information with a single count of theft of property valued at more than $1,000 but less than $2,500. Pursuant to a plea agreement, on December 14, 2021, Defendant, a Range II offender, pleaded guilty as charged in exchange for a three-year probationary sentence. On December 9, 2022, a violation of probation affidavit was sworn before the trial court alleging that Defendant violated the terms of his probation by committing three new offenses: operating an off-road vehicle on a highway, driving without a license, and failing to wear a helmet. A violation warrant issued that same day. The warrant was dismissed by the trial court on January 26, 2023, and Defendant was ordered to remain on probation to finish his sentence.

A second violation affidavit was purportedly sworn before the trial court on May 15, 2024, alleging that Defendant violated the terms of his probation by incurring new charges for violating the sex offender registry requirements, perjuring himself on sex offender registry forms, and failing to make payments toward his court costs and restitution. The affidavit reads that Stephanie Fox "personally" came before the court, was "duly sworn," and provided a description of Defendant's alleged violations. However, the affidavit is not signed by Ms. Fox but by Jeffrey Skeen "for Stephanie Fox." A violation warrant based on the affidavit issued that same day.

On June 5, 2024, Defendant, citing Tennessee Rule of Criminal Procedure 3, moved to dismiss the violation warrant on grounds that the probation violation affidavit was not signed by the affiant as required by law. The State, citing *State v. Hufford*, No. E2017-02464-CCA-R3-CD, 2019 WL 518713 (Tenn. Crim. App. Feb. 2019), responded that a violation warrant need not comply with the general mandates for the issuance of arrest warrants and that, instead, the issuance of probation violation warrants is governed solely by Tennessee Code Annotated section 40-35-311.

At the September 6, 2024 hearing, the State dismissed the allegation regarding the failure to pay restitution and asked to proceed on the allegations related to Defendant's garnering new charges for violating the sex offender registry requirements.

Ms. Fox of the Tennessee Department of Correction testified that she supervised Defendant's compliance with the sex offender registry requirements from August 2023 to May 2024. Ms. Fox explained that Defendant, who was homeless, lived alternatively at a homeless encampment and a motel on Asheville Highway. After receiving a tip, Ms. Fox visited Defendant in February 2024, and her partner searched Defendant's cell phone. Ms. Fox said that after her partner discovered "threatening behaviors" and "other manners" on the phone, she seized the phone. Ms. Fox did not elaborate on the nature of these

communications. Ms. Fox told Defendant not to obtain another cell phone "until this cell phone was cleared."

Upon receiving a second tip, Ms. Fox visited Defendant again and discovered a second cell phone in his possession. Ms. Fox said that she and her partner discovered new social media accounts on the second phone and noted that the number for the phone was not listed on Defendant's sex offender registry forms. Defendant told Ms. Fox that the phone belonged to a friend and that he used it sporadically to access his social media accounts. Ms. Fox was unable to conclusively determine how long Defendant had had access to the second phone. Defendant admitted, however, that he had opened the new social media accounts in April 2024 after the first phone was seized in February.

Ms. Fox agreed that registrants have forty-eight hours to report changes to their circumstances, including the possession of a cell phone. She said that Defendant "went two months without reporting the new accounts." During that time, Defendant had ample opportunity to report the accounts to Ms. Fox because he met with her "at least three times a month." Although Ms. Fox could not say with certainty whether Defendant ever had more than forty-eight hours' continuous access to the second cell phone, she said that the social media accounts remained open continuously from the time they were opened until she discovered them.

Based upon this evidence, the State asked the trial court to revoke Defendant's probation for committing the offense of violating the sexual offender registry requirements. The State argued that Defendant knew that he was not permitted to access social media or to use it to contact minors, but the State presented no evidence that Defendant had used the social media accounts or cell phone to contact minors. The State asked the trial court to order Defendant to serve the balance of his sentence in confinement.

Defendant argued that the violation warrant was void because the affidavit in support of the warrant was not signed by Ms. Fox, who was listed as the affiant. Defendant asserted that the State had failed to establish that Defendant committed perjury on his registration forms or that he possessed the second cell phone for any continuous period of more than forty-eight hours such that he would have been required to place the number on his registration forms.

The trial court first found that even if the violation warrant was invalid, it did not affect the validity of the revocation proceeding. The court went on to conclude that the warrant was valid because the affidavit was signed by Mr. Skeen, whom the trial court described as "the court liaison for TDOC." The court compared Mr. Skeen's presenting

3

and signing the affidavit to "reliable hearsay" because Mr. Skeen gained his "information and belief the same way that Ms. Fox did." The court denied the motion to dismiss the revocation proceeding.

The trial court found that Defendant had violated the sex offender registry requirements by failing to report that he had opened new social media accounts. The court stated that it "suspect[ed] that" Defendant's possession of the second cell phone was a violation but said "that's not really the issue before the [c]ourt." The court was most concerned about the social media accounts, classifying TikTok and Snapchat as "two of the primary social media apps being used by youth these days." The court reasoned that Defendant violated his probation by "not reporting that he had opened these accounts" and found that Defendant was "a danger to the community." To support the latter finding, the court found that Defendant engaged in "another level of deceit" by "trying to hide his behavior" by using a friend's phone to access the accounts. The court deemed Defendant's behavior "predatory." The court determined that Defendant was not entitled to "another shot at probation" and ordered him to serve the balance of his sentence in confinement.

Defendant has timely appealed both the denial of his motion to dismiss and the court's order sentencing him to full confinement.

**Analysis**

In this appeal, Defendant argues that the trial court erred by refusing to dismiss the revocation proceeding for lack of a valid warrant and by finding that Defendant was a danger to the community and ordering that he serve the balance of his sentence in confinement. The State contends that the trial court did not err.

I. Motion to Dismiss

Defendant moved the trial court to dismiss the revocation proceeding on grounds that the violation warrant was invalid because the affidavit in support of the warrant was not signed by the affiant, Ms. Fox. He argued, as he does on appeal, that the phrase "as in any other criminal case" in Tennessee Code Annotated section 40-35-311(a)(1)(A) means that the issuance of an arrest warrant for a probation violation must comply with the procedural rules for the issuance of arrests warrants. The State argued, as it does on appeal, that because revocation proceedings are governed by statute and because the statute makes no reference to compliance with the procedural rules for the issuance of arrest warrants, the failure of the violation warrant to comply with those requirements does not affect its validity.

Tennessee Code Annotated section 40-35-311 provides:

4

(a)(1) Whenever it comes to the attention of the trial judge that a defendant who has been released upon suspension of sentence has been guilty of a breach of the laws of this state or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under the trial judge's hand:

> (A) A warrant for the arrest of the defendant as in any other criminal case; or
>
> (B) For a technical violation brought by a probation officer, and subject to the discretion of the judge, a criminal summons.

Tenn. Code Ann. § 40-35-311 (Supp. 2022). The statute thus empowers the trial court to issue an arrest warrant "as in any other criminal case" when it has been made aware of an alleged violation. The State cites this court's opinion in *State v. Hufford*, No. E2017-02464-CCA-R3-CD, 2019 WL 581713 (Tenn. Crim. App. Feb. 13, 2019), for the proposition that despite this language, the validity of the violation warrant does not depend on its compliance with the law regarding the issuance of arrest warrants.

In *Hufford*, the defendant argued "that the affidavit and arrest warrant form was invalid and void based upon the wrong box being checked for classification of offense, the wrong date of conviction for the underlying offenses, and the inclusion of the convictions that were reversed on appeal." *Hufford*, 2019 WL 581713, at *3. This court stated that "the authority of a trial judge to issue a probation revocation warrant is governed by statute and not by Rules 3 and 4 of the Rules of Criminal Procedure." *Id.* at 4. In support of this statement, we cited a handful of our previous unpublished opinions. *See id.* (first citing *State v. Chisam*, No. C.C.A. 85-194-III, 1985 WL 4424, at *4 (Tenn. Crim. App. Dec. 13, 1985); then *State v. Hernandez*, No. M2012-01235-CCA-R3-CD, 2013 WL 1858778, at *6 (Tenn. Crim. App. May 2, 2013); then *State v. Tucker*, No. E2001-00017-CCA-R3-CD, 2001 WL 957462, at *2 (Tenn. Crim. App. Aug. 23, 2001); and then *State v. Cousett*, No. W1999-01256-CCA-R3-CD, 2000 WL 205055, at *1 (Tenn. Crim. App. Feb. 10, 2000)). Ultimately, the *Hufford* panel relied on the analysis from *Tucker* to "conclude that 'the constitutional validity of the arrest, alone, has no relevance to a probation revocation proceeding about which the defendant has received adequate notice of the charges against him" and to find that the "typographical errors" in the violation warrant "did not deprive the Defendant of such notice." *Id.* (quoting *Tucker*, 2001 WL 957462, at *2).

Defendant argued in his reply brief and at oral argument that *Hufford* and those cases cited therein simply parroted the analysis from *Chisam*, which was itself incorrect, without any discussion of that case's continuing validity. The State conceded as much at oral argument but nevertheless asserted that the cases remained good law.

Because the trial court denied Defendant's motion to dismiss based upon its application of the law to undisputed facts, the propriety of that dismissal is a question of law that we review "de novo with no presumption of correctness given to the trial court's

holdings." *State v. Jones*, 512 S.W.3d 258, 260 (Tenn. Crim. App. 2016) (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)).

## A. Chisam and Progeny

In *Chisam*, the defendant was charged with "assault with intent to commit robbery upon a victim over sixty-five (65) years of age." *Chisam*, 1985 WL 4424, at *1. Prior to his trial, Chisam moved to suppress evidence seized during a search of his person following his arrest pursuant to a probation violation warrant, arguing that the search was illegal because the arrest warrant was invalid for alleging that he had violated an unlawful condition of probation. *See id.* at *3. This court explained that as a condition of Chisam's previously imposed probation, the trial court ordered him to leave the state and never return. *See id.* When the trial court learned from Chisam's probation officer that Chisam had returned to Tennessee, the trial court issued a probation violation warrant that "[i]n addition to other things," "commanded the arrest of the defendant." *Id.* at *3-4. Chisam's probation was subsequently revoked, but on appeal of the revocation, this court "found that the probation condition that the defendant leave the [s]tate was improper and without legal sanction." *Id.* at *3 (citing *State v. Chisam*, C.C.A. No. 84-82-III (Tenn. Crim. App. Aug. 27, 1985)). In Chisam's revocation case, this court reversed "and reinstated the defendant's probation" but "made no ruling on the validity of the probation revocation warrant itself." *Id.*

Citing our ruling in the revocation appeal, Chisam challenged the validity of his arrest and the admission of the evidence it produced prior to his subsequent trial. *See id.* The trial court denied the motion to suppress, and this court affirmed, observing that at the time of Chisam's arrest "the probation condition was in full force and operative" and that "the trial court was fully authorized to issue a probation violation warrant for the alleged violation." *Id.* at *4. We concluded that our decision to reverse the revocation and reinstate the defendant's probation did not affect the validity of the probation violation warrant because the inclusion of an unmeritorious condition of probation did not "serve to invalidate the warrant itself." *Id.*

The *Chisam* panel also stated that the violation warrant was valid on its face, despite alleging the violation of an improper condition of probation, because it "sufficiently complie[d] with the requirements" of Tennessee Code Annotated section 40-21-107, which then governed the issuance of revocation warrants. *Id.* At that time, Code section 40-21-107 provided:

> Whenever it shall come to the attention of the trial judge that any defendant who has been released upon suspension of sentence has been guilty of any breach of the laws of this state or who has violated the conditions of his probation, the trial judge shall have the power in his discretion to cause to be issued under his hand a warrant for the arrest of such defendant as in

6

any other criminal case. Said warrant may be executed by a probation or parole officer or any peace officer of the county in which the probationer is found. Any probation or parole officer for cause may arrest a probationer without a warrant.

Tenn. Code Ann. § 40-21-107 (1982) (repealed). This court concluded that the violation warrant, which "stated that it had been brought to the trial judge's attention" that Chisam "may have violated the condition of his probation," listed the date of the probation order, and commanded the arrest of the defendant, "was a valid probation revocation warrant." *Chisam*, 1985 WL 4424, at *4.

Additionally, the panel found "no merit" to Chisam's claim that the probation violation warrant "was not issued in compliance with" Tennessee Rules of Criminal Procedure 3 and 4 without articulating the precise nature of Chisam's actual claim. *See id.* at *4. This court stated that the "authority of a trial judge to issue probation revocation warrants is governed by T.C.A. § 40-21-107 and not by Rules 3 and 4 of the Rules of Criminal Procedure." *Id.* The panel reasoned that the language allowing the trial court to issue an arrest warrant "under his own hand" meant that the court could issue an arrest warrant for a probation violation "without the necessity of affidavits." *See id.* However, the power to issue arrest warrants in this state has *always* required the trial court to examine the informant "on oath" and to reduce the facts stated by the informant to a writing that is "signed by the person making it." *See* Tenn. Code Ann. §§ 5020-5022 (1858).[1] Nevertheless, the *Chisam* panel stated that the language empowering the trial judge "to issue a warrant for the arrest of the defendant 'as in any other criminal case,'" "obviously relates to the arrest of the defendant and not to the issuance of the warrant itself" and classified that "phrase [a]s merely a command to the officer to arrest the defendant just as he would arrest any other defendant in any other criminal case." *Chisam*, 1985 WL 4424, at *4.

Thus, the primary holding in *Chisam* was that the trial court did not err by denying Chisam's motion to suppress because the subsequent reversal of Chisam's probation revocation did not invalidate the probation violation warrant itself. Because that holding did not require analysis of the revocation statute, the language regarding the issuance of violation warrants is arguably dicta. Furthermore, the analysis in *Chisam* was based on a statute that was specifically repealed by the 1989 Sentencing Act and that allowed for the arrest of probationers without a warrant. *See* 1989 Pub. Acts, c. 591, § 7; *see also State v. Carden*, 653 S.W.2d 753, 754-55 (Tenn. Crim. App. 1983) (rejecting defendant's claim that Code section 40-21-107 "mandates commencement of revocation proceedings by arrest warrant"); *State v. Deyton*, No. C.C.A. 234, 1989 WL 7327, at *1 (Tenn. Crim. App. Feb. 2, 1989) (stating that prior to the 1989 Sentencing Act, "probation under a suspension of

---

[1] We are aware that our Code has not been consistently cited as Tennessee Code Annotated, but we utilize this citation for consistency in this opinion and to enable readers to quickly and reliably access the materials we reference herein using the year and section of the Code.

sentence was governed entirely by T.C.A. §§ 40-21-101 to 40-21-109"). The *Chisam* panel did not address those statutes governing the issuance of arrest warrants despite that Rules 3 and 4 were derived from the statutory language for the issuance of arrest warrants. *See, e.g.*, Tenn. R. Crim. P. 4, Advisory Comm'n Cmts. Despite this omission, the overall lack of analysis, and *Chisam's* status as an unpublished opinion, this court has continued to rely on it for the proposition that an affidavit of complaint is not required for the issuance of a valid probation violation warrant.

In *Cousett*, the defendant argued that Rules 3 and 4 mandated that an arrest warrant for a community corrections violation "must be based upon sworn facts from which the trial court can make a determination of probable cause." *Cousett*, 2000 WL 205055, at *1. The case officer "filed an unsworn 'affidavit'" detailing Cousett's alleged community corrections violations, and the trial court issued an arrest warrant based on the written but unsworn allegations. *See id.* Cousett did not challenge the validity of the warrant in the trial court and admitted some of the alleged violations. *See id.* On appeal, however, Cousett challenged the validity of the violation warrant because it did not comply with the requirements of Rules 3 and 4 and argued "that the warrant and all subsequent proceedings [were] void." *Id.*

The revocation statute at issue in *Cousett* was Code section 40-35-311, which, at that time, provided in pertinent part:

> Whenever it shall come to the attention of the trial judge that any defendant who has been released upon suspension of sentence has been guilty of any breach of the laws of this state or who has violated the conditions of his probation, the trial judge shall have the power to cause to be issued under his hand a warrant for the arrest of such defendant as in any other criminal case.
> . . .

Tenn. Code Ann. § 40-35-311(a) (1989). This version of the revocation statute removed the provision permitting the warrantless arrest of probationers but retained the provision empowering the trial judge "to cause to be issued *under his own hand* a warrant for the arrest," *id.* (emphasis added), which provision this court had previously decided obviated the need for affidavits, *see Chisam*, 1985 WL 4424, at *4. Without discussing the statutory amendments following *Chisam* and instead of relying on the "under his own hand" language to find that affidavits were not a necessary prerequisite to the issuance of a violation warrant, the *Cousett* panel concluded that affidavits were not a prerequisite for the issuance of a violation warrant because the statute authorized issuance of an arrest warrant "[w]henever it *comes to the attention of the trial judge* that any defendant" has violated the conditions of his probation. *Cousett*, 2000 WL 205055, at *1. Like *Chisam*, *Cousett* does not discuss the statutory language governing issuance of arrest warrants.

8

In *Tucker*, the defendant challenged the probation violation warrant and underlying affidavit for the first time on appeal on grounds that the affidavit "neither alleges nor indicates that his original probationary period had been extended." *Tucker*, 2001 WL 957462, at *1. Tucker argued that a violation warrant "regarding probation violation is to be governed as the equivalent of an arrest warrant" and "that the affidavit for an arrest warrant must allege the essential facts constituting the offense." *Id.* (citing Tenn. R. Crim. P. 3; 4). As it has here, the State cited *Chisam* and *Cousett* to argue that an affidavit was not a statutory prerequisite to the issuance of a probation violation warrant. *See id.* The *Tucker* panel expressed "serious[] doubt that a custodial arrest, i.e., a seizure of the person to the utmost degree through state action, may occur without adequate probable cause supported by affidavit under constitutional search and seizure requirements" but nevertheless concluded, again without analysis, "that revocation proceedings are not rendered void merely because the allegations of fact that, if true, justify revocation were not placed in affidavit form." *Tucker*, 2001 WL 957462, at *2. This court stated, "The constitutional validity of the arrest, alone, has no relevance to a probation revocation proceeding about which the defendant has received adequate notice of the charges against him." *Id.*

In *Hernandez*, this court cited *Chisam*, *Cousett*, and *Tucker* and stated that "a sworn affidavit" was not "a prerequisite to issuing a probation violation warrant." *Hernandez*, 2013 WL 1858778, at *6 (citations omitted). Without undertaking any separate analysis, this court concluded that "[b]ecause no affidavit is required by law, the lack of sworn allegations in this case does not invalidate the probation violation warrant." *Id.*

Two core conclusions can be derived from these cases: (1) probation revocation is governed only by the revocation statute and (2) affidavits may or may not be required, but even if they are, a revocation proceeding may still be valid so long as the defendant receives constitutionally sufficient notice of the alleged violations. However, our examination of the analysis in each of these cases also reveals several core omissions: (1) none of the panels conducted a thorough analysis of the interplay between the probation revocation statute and the rules of procedure; (2) none of the panels conducted addressed the interplay between the probation revocation statute and the statutes governing the issuance of arrest warrants; (3) none of the panels addressed the changes to the revocation statute over time; and (4) none of the panels addressed the fact that a probation violation warrant is the exclusive means of commencing a probation revocation proceeding and tolling the expiration of the period of probation, *see, e.g.*, *State v. Anthony*, 109 S.W.3d 377, 382 (Tenn. Crim. App. 2001). Given these omissions, we will consider whether, under the current version of Code section 40-35-311, the failure to satisfy the statutory and procedural requirements for the issuance of a valid arrest warrant invalidates a probation violation warrant and, if so, whether invalidation of the warrant voids the revocation proceeding.

9

*B. History of Probation Revocation*

We begin our analysis with a brief history of probation and probation revocation to put our prior opinions in their proper historical context.

At common law, trial courts were permitted to suspend a judgment "for an indefinite time . . . as a disciplinary measure" designed "to secure future good behavior" to balance the fact that "English courts of criminal law had no power to grant new trials, and their judgments were not subject to review on the facts by any higher court," making the power to suspend judgments "humane, and, in a sense, necessary." *Spencer v. State*, 140 S.W. 597, 598 (Tenn. 1911). However, because "the same disabilities d[id] not exist" in Tennessee, the Tennessee Supreme Court concluded that the power to suspend judgments was not necessary and, accordingly unavailable to the trial court. *Id.* at 599. The legislature changed this rule in 1931 when it empowered criminal courts "to suspend sentence in misdemeanor and petty felonies upon application of the defendant." *Howe v. State ex rel. Pyne*, 98 S.W.2d 93, 94 (Tenn. 1936); *see* Tenn. Code Ann. § 11802.1 (1934) ("All trial judges in the state having criminal jurisdiction are hereby authorized and empowered to suspend imprisonment and/or parole defendants . . . convicted of a misdemeanor or convicted of any felony, the maximum punishment for which does not exceed five years' confinement . . . .").[2] Thus, prior to 1931, trial courts had no authority to suspend any sentence. *See Atchley v. State*, 144 S.W.2d 748, 748 (Tenn. 1940). Consequently, our supreme court held that because the "power to parole or to suspend a sentence" as provided in the 1931 Act operated "in derogation of the common law," the "Act must be strictly construed." *Id.* (citations omitted).

The 1931 Act also provided the trial court with authority to "revoke and annul such parole and/or suspension" within certain statutory time limits that are not relevant here. Tenn. Code Ann. § 11802.2 (1934); *see Howe*, 98 S.W.2d at 94. The Code outlined the procedure for revocation:

> Whenever it shall come to the attention of the trial judge that any defendant whose sentence has been suspended and/or paroled shall have been guilty of any breach of the laws of this state or shall have been guilty of a breach of the peace or any other conduct inconsistent with good citizenship, the trial judge shall have the power in his discretion to cause to be issued under his hand a notice to the defendant whose sentence has been suspended and/or paroled which notice shall contain in brief form the nature of the charges made against such defendant and shall also require him to appear before the trial judge at some regular or special term of his court, which date for appearance shall be not less than ten (10) days from the execution of such notice. Upon the day fixed, the trial judge shall proceed to investigate the

---

[2] The early statutes and cases use the terms suspension and parole interchangeably to refer to what we now call probation.

charges made against the defendant, and after a hearing at which the defendant may be present, may be represented by counsel and shall have the right to introduce testimony in his behalf thereon, the trial judge may enter such judgment upon the question of such charges as he may deem right and proper under the evidence adduced before him. In case the trial judge shall find that the defendant has been guilty of a violation of some statute of this state or has been guilty of conduct inconsistent with good citizenship, the trial judge shall have the right by order entered upon his minutes to revoke the suspension of sentence and/or parole theretofore granted to the defendant . . . .

Tenn. Code Ann. § 11802.3 (1934); *see Arney v. State*, 256 S.W.2d 706, 708 (Tenn. 1953) ("The purpose of the Legislature in the enactment of Section 11802.3 was to provide for the revocation of a suspension of sentence order upon breach by the defendant of the conditions under which the order was entered."). In *Arney*, the Tennessee Supreme Court held that because the statute did not "limit or specify the manner in which 'it shall come to the attention of the trial judge' that the defendant" violated the conditions of his suspended sentence, such violations could "conceivably come to the attention of the Trial Judge in a number of ways other than by formal affidavit or petition of a third party." *Arney*, 256 S.W.2d at 708-09 (citations omitted). In contrast to our current probation revocation statute, former Code section 11802.3 provided only for the issuance of "a notice to the defendant" that contained a brief statement of "the nature of the charges" and that required the defendant to appear before the court within ten days of the execution of the notice. *See* Tenn. Code Ann. § 11802.3 (1934). The statute did not authorize the issuance of an arrest warrant or the warrantless arrest of the defendant. *See id.* Moreover, at that time, revocation proceedings were "generally regarded as informal." *Arney*, 256 S.W.2d at 708-09 (citations omitted).

The provisions in former Code section 11802 were "brought into" the Code as "sections 40-2902 through 2906" via the 1950 Code supplement. *McGuire v. State*, 292 S.W.2d 190, 192 (Tenn. 1956). The revocation statute still provided for the issuance of "a notice to such defendant" containing a brief statement of "the nature of the charges made" and a requirement that the defendant "appear before the trial judge at some regular or special term" of court within five days of the execution of the notice. Tenn. Code Ann. § 40-2907. The high court explained in *McGuire* that "[t]he proceeding to revoke a suspended sentence is in the nature of a continuation of the original prosecution" and that, as a result, the time limitation provided in Code section 40-2906 operates "as a statute of limitations and the same is tolled the same as any other act containing a limitation of power." *McGuire*, 292 S.W.2d at 193; *see* Tenn. Code Ann. § 40-2906 (empowering trial judges to revoke "such suspension and/or parole . . . within twelve (12) months . . . in cases of misdemeanors, and for a period of time equivalent to the maximum punishment which can be imposed for the offense committed by the defendant, in felony cases"). The *McGuire* court noted that "[t]he commencement of any criminal prosecution is upon the

issuance of a criminal warrant, as in the cases at bar" and concluded that the filing and service of the statutorily required "notice" within the limitations period "suspended the running of the statute until such time as the trial court could hear and determine the issue raised by the notice." *McGuire*, 292 S.W.2d at 193 (citing Tenn. Code Ann. § 40-206 (Supp. 1950)).

The legislature authorized the issuance of an arrest warrant for a probation violation in 1961. The statute provided that "when it comes to the attention of a trial judge that a defendant released upon a suspended sentence has been guilty of violating the terms of the suspension, he shall cause to be issued *a warrant for the arrest of such defendant as in other criminal cases*." *Davenport v. State*, 381 S.W.2d 276, 278-79 (Tenn. 1964) (citing Tenn. Code Ann. § 40-2907 (Supp. 1963)) (emphasis added). The supreme court theorized that by replacing the formal notice requirement with an authorization to issue an arrest warrant, the legislature "intended" that the State only "make known to the defendant generally the charges that she is called upon to defend." *Davenport*, 381 S.W.2d at 278-79 (citing *Hooper v. State*, 297 S.W.2d 78 (Tenn. 1956) (interpreting the notice provision in the prior version of Code section 40-2907)). This reading is consistent with Code section 40-6-201, formerly section 40-706, which provides that "[a] warrant of arrest is an order, in writing, stating *the substance of the complaint*, directed to a proper officer, signed by a magistrate, and commanding the arrest of the defendant." Tenn. Code Ann. § 40-6-201 (emphasis added). This language has remained unchanged for more than 150 years, *see* Tenn. Code Ann. § 40-6-201 (2025); Tenn. Code Ann. § 40-706 (Supp. 1950); Tenn. Code Ann. § 11521 (1934); Tenn. Code Ann. § 6982 (1917); Tenn. Code Ann. § 5023 (1858), and we must presume that the legislature was aware of this statute as well as the statutes related to the issuance of arrest warrants, *see Davis v. State*, 313 S.W.3d 751, 762 (Tenn. 2010) ("When construing a more recent statute in conjunction with pre-existing legislation, 'we presume that the legislature has knowledge of its prior enactments and is fully aware of any judicial constructions of those enactments.'" (citation omitted)).

In *Allen v. State*, our supreme court held "that a probation revocation proceeding is a continuation of the criminal prosecution, and as such, the defendant . . . has a constitutional right to a speedy trial on 'the offense of violation of the terms of probation.'" *Allen v. State*, 505 S.W.2d 715, 719 (Tenn. 1974); *see* Tenn. Code Ann. § 40-2907 ("Whenever it shall come to the attention of the trial judge that any defendant who has been released upon suspension of sentence has been guilty of any breach of the laws of this state or who has violated the conditions of his probation, the trial judge shall have the power in his discretion to cause to be issued under his hand a warrant for the arrest of such defendant as in any other criminal case. . . . And probation and paroles officer for cause may arrest a probationer without a warrant."). The supreme court concluded that "as in other criminal prosecutions," the running of the term of probation "is tolled by the issuance of the warrant and not by service of the warrant on the defendant." *Id.* at 717. In arriving at these

holdings, the court observed that "the legislature in T.C.A. § 40-206[3] has also indicated that the commencement of a prosecution, and by implication the tolling of a statute of limitation, is made 'by finding an indictment or presentment, the issuing of a warrant, or by binding over the offender'" and that "as early as 1851, in *State v. Miller*, 30 Tenn. 505, this Court held that the prosecution commences, and by implication the statute of limitation is tolled, by the issuance of a warrant." *Id.* The court noted that given its previous holdings, "it would be totally inconsistent for us to say that the probation revocation procedure is not a criminal prosecution or a continuation thereof." *Id.* at 719.

With the 1982 Sentencing Act, the legislature amended the probation revocation statute to the version of the statute at issue in *Chisam* and discussed above. The legislature amended the revocation statute as part of the 1989 Sentencing Act and moved it to its current location at Tennessee Code Annotated section 40-35-311, again as discussed above.

Subsequent amendments to the statute have not altered the language at issue in this case, and, importantly, since the ruling in *Allen*, the supreme court and this court have consistently held that only "the issuance of the warrant commences the revocation proceedings and thereby interrupts the running of the probationary period." *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (first citing *McGuire*, 292 S.W.2d at 193; and then *Allen*, 505 S.W.2d at 717). Additionally, we have consistently held that the warrant of arrest authorized by the probation revocation statute is identical to the "warrant of arrest" defined elsewhere in the Code. *See, e.g.*, *State v. Wall*, No. M2024-00979-CCA-R3-CD, 2025 WL 1604434, at *4 (Tenn. Crim. App. June 6, 2025) ("Tennessee law requires that probation revocation proceedings be initiated by a formal legal process that satisfies the statutory definition of a warrant, whether titled as a warrant or as another type of order."), *no perm. app. filed*; *see also, e.g.*, *State v. Washington*, No. E2008-00515-CCA-R3-CD, 2009 WL 2263850, at *4 (Tenn. Crim. App. July 29, 2009).

Our historical review establishes that despite amendments to the revocation statutes, courts in this state have treated probation revocation proceedings as criminal in nature and, consequently, have applied the same statutory and constitutional principles to probation revocation proceedings as other criminal proceedings, apart from the line of unpublished cases from this court beginning with *Chisam*. Following our examination of the history of the revocation statute and those cases interpreting it, we conclude that the rulings in *Chisam* and its progeny are inconsistent with the statutory language of the revocation statute, our other jurisprudence addressing probation revocation proceedings, and the statutory requirements attendant to the issuance of arrest warrants. Because they are unpublished, we are not bound by their reasoning, which, considering our historical review, we find

---

[3] This language is currently found in Code section 40-2-104, which provides that "[a] prosecution is commenced . . . by finding an indictment or presentment, the issuing of a warrant, binding over the offender, by the filing of an information . . . , or by making an appearance in person or through counsel in general sessions or any municipal court for . . . any purpose involving the offense." Tenn. Code Ann. § 40-2-104.

unpersuasive. Accordingly, we must now determine what is required for the issuance of a valid revocation warrant, whether the warrant in this case met those requirements, and the appropriate remedy if it did not.

## C. Validity of the Violation Warrant

The trial court denied Defendant's motion to dismiss based upon its application of the law to undisputed facts, and, consequently, the propriety of that dismissal is a question of law that we review "de novo with no presumption of correctness given to the trial court's holdings." *Jones*, 512 S.W.3d at 260 (citing *Sherman*, 266 S.W.3d at 401). The trial court denied Defendant's motion after concluding that any defect in the affidavit would not impact the validity of the warrant because Tennessee Rules of Criminal Procedure 3 and 4 did not apply to arrest warrants issued for alleged probation violations. We will consider whether the statutory language of the revocation statute supports this conclusion.

When construing statutes, "[t]he text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Colley v. Colley*, 715 S.W.3d 293, 306 (Tenn. 2025) (quoting *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019)). We examine "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *Id.* (quoting *Coffee Cnty.*, 574 S.W.3d at 839). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) (citing *State v. Nelson*, 23 S.W.3d 270, 271 (Tenn. 2000)). "In the absence of statutory definitions, we look to authoritative dictionaries published around the time of a statute's enactment. *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (citing *State v. Edmondson*, 231 S.W.3d 925, 928 & n.3 (Tenn. 2007)).

We must avoid any construction that leads to absurd results. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016) (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)). Instead, "[o]ur construction must be reasonable in light of the statute's purposes and objectives." *Colley*, 715 S.W.3d at 306 (quoting *In re Markus E.*, 671 S.W.3d 437, 460 (Tenn. 2023)). "Furthermore, the 'common law is not displaced by a legislative enactment, except to the extent required by the statute itself.'" *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020) (citations omitted). We must "endeavor to resolve any possible conflict between statutes to provide for a harmonious operation of the laws." *Welch*, 595 S.W.3d at 622 (citing *State v. Frazier*, 558 S.W.3d 145, 152 (Tenn. 2018)). "When construing a more recent statute in conjunction with pre-existing legislation, we presume that the legislature has knowledge of its prior enactments and is fully aware of any judicial constructions of those enactments." *Davis*, 313 S.W.3d at 762 (quoting *Hicks v. State,* 945 S.W.2d 706, 707 (Tenn. 1997)) (internal quotation marks omitted).

14

When the legislature authorized the issuance of a warrant for the arrest for a probation violation in 1961, a "warrant of arrest" was defined by statute as "an order, in writing, stating the substance of the complaint, directed to a proper officer, signed by a magistrate, and commanding the arrest of the defendant." Tenn. Code Ann. § 40-706 (Supp. 1950).[4] Furthermore, the Code provides a statutory scheme for the issuance of arrest warrants. *See* Tenn. Code Ann. § 40-6-202 ("For the apprehension of persons charged with public offenses, magistrates are authorized within their jurisdiction, to issue warrants of arrest, under the rules and regulations prescribed in this part."); *see also* Tenn. Code Ann. § 40-701 (Supp. 1950) (same); Tenn. Code Ann. § 11517 (1934) (same); Tenn. Code Ann. § 6978 (1917) (same); Tenn. Code Ann. § 5019 (1858) (same). Code section 40-6-203 provides: "Upon information made to any magistrate of the commission of a public offense, the magistrate shall examine, on oath, the affiant or affiants, reduce the examination to writing, and cause the examination to be signed by the person making it." Tenn. Code Ann. § 40-6-203(a); *see also* Tenn. Code Ann. § 40-702 (Supp. 1950) (same); Tenn. Code Ann. § 11518 (1934) (same); Tenn. Code Ann. § 6979 (1917) (same); Tenn. Code Ann. § 5020 (1858) (same). An affiant is "[s]omeone who makes an affidavit or declaration under oath." *Affiant*, BLACK'S LAW DICTIONARY (12th ed. 2024). Code section 40-6-204 mandates that "[t]he written examination shall set forth the facts stated by the affiant or affiants that establish that there is probable cause to believe an offense has been committed and that the defendant committed it." Tenn. Code Ann. § 40-6-204; *see also* Tenn. Code Ann. § 40-703 (Supp. 1950) (same); Tenn. Code Ann. § 11519 (1934) (same); Tenn. Code Ann. § 6980 (1917) (same); Tenn. Code Ann. § 5021 (1858) (same).

We must presume that the legislature was aware of both the statutory definition of an arrest warrant as well as the statutory procedure to be followed before issuing an arrest warrant when it authorized the trial court to issue an arrest warrant for an alleged probation violation. *See Davis*, 313 S.W.3d at 762. Moreover, "when multiple statutes 'relate to the same subject matter or have a common purpose,' they are to be considered *in pari materia*." *Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023) (citation omitted); *see also Deberry*, 651 S.W.3d at 925 (Tenn. 2022) (stating that "[S]tatutes 'in pari materia'—those relating to the same subject or having a common purpose—are to be construed together" (alteration in *Deberry*) (citation omitted). To this end, we must "construe statutes together" and "give the intended effect to both statutes" to "uncover the most reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Falls*, 673 S.W.3d at 180 (citation and internal quotations omitted). "Aligned with the related-statutes canon of statutory interpretation," this principle "is 'based upon a realistic assessment of what the legislature ought to have meant,' and is derived from the expectations that 'the body of the law should make sense' and that 'it is the responsibility of the courts, within the permissible meanings of the text, to make it so.'" *Id.* (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012)). Considering Code

---

[4] This statute has remained unchanged. *See* Tenn. Code Ann. § 40-6-201 (same); Tenn. Code Ann. § 115121 (1934) (same); Tenn. Code Ann. § 6982 (1917) (same); Tenn. Code Ann. § 5023 (1858) (same).

section 40-35-311 *in pari materia* with the statutes governing the issuance of arrest warrants, *see id.* (quoting Anuj C. Desai, *The Dilemma of Interstatutory Interpretation*, 77 Wash. & Lee L. Rev. 177, 197, 199 (2020)), we conclude that the legislature meant the phrase "whenever it comes to the attention of the trial court," *see* Tenn. Code Ann. 40-35-311(a), to have essentially the same meaning as "upon information made to" the magistrate before the issuance of an arrest warrant, *see id.* § 40-6-203(a); *see also Arney*, 256 S.W2d at 708 (holding that although the revocation statute in effect in 1950 did not "limit or specify the manner in which 'it shall come to the attention of the trial judge that the defendant has violated" his probation, the plain language of the statute "necessarily means that some person other than the Trial Judge file the charges upon which the Trial Judge issues the notice to the defendant").

We turn next to the portion of the statute that provides that the trial judge issues a probation violation warrant "under the trial judge's hand." Tenn. Code Ann. § 40-35-311(a). We disagree with the *Chisam* panel that this phrase somehow frees the trial court from the other procedural prerequisites for the issuance of arrest warrants. *See Chisam*, 1985 WL 4424, at *4. Historically, the phrase "under hand" was used to describe those official documents that could be issued without the need of a seal. *See Starr v. United States*, 153 U.S. 614, 619 (1894) (considering whether an arrest warrant "attested 'under hand,' but not 'under seal'" was valid and observing "that there was no settled rule at common law invalidating warrants not under seal, unless the magistrate issuing the warrant had a seal of office, or a seal was required by statute"). In *Tackett v. State*, the Tennessee Supreme Court considered the validity of an arrest warrant that "was in the usual form, except that it issued *under the hand* of the magistrate, alone, without affixing his seal thereto" and found "that a warrant commanding an arrest on behalf of the state, not having the magistrate's seal, is void." *Tackett v. State*, 11 Tenn. 392, 392-94, 1832 WL 1149, at *1 (1832) (emphasis added); *see also United States v. Clough*, 55 F. 373, 374 (6th Cir. 1893) ("In Tennessee the seal of the magistrate is necessary to validate his warrant or mittimus." (citation omitted)); *Bell v. Farnsworth*, 30 Tenn. 608, 608-09, 1850 WL 2160, at *1 (1850) ("In a criminal proceeding, a magistrate's warrant without seal, commanding an arrest, is to be held as void, and as conferring no authority on the officer to make the arrest."). Thus, this phrase could be interpreted as simply dispensing with the need of a seal. Employing a more modern interpretation, however, this court concluded in *Wall* that "under the trial judge's hand" simply means that the trial judge, and not a clerk, must "sign the violation warrant." *Wall*, 2025 WL 1604434, at *4. Neither interpretation supports the conclusion that the trial judge may issue an arrest warrant for a probation violation without following the statutory procedures for the issuance of an arrest warrant. Moreover, because Code section 40-35-310 vests the power to revoke probation solely in the trial judge, it makes sense that the violation warrant be issued "under the trial judge's hand." *See* Tenn. Code Ann. § 40-35-310; -311(a)(1); *Wall*, 2025 WL 1604434, at *4 (observing that "the Attorney General has likewise concluded that a probation violation warrant cannot be issued by a clerk but must instead be authorized by the trial judge" (citing Tenn. Op. Att'y Gen. No. 04-054 (Mar. 26, 2004)).

Furthermore, it is our view that the phrase "as in any other criminal case" means that the arrest warrant to be issued for a probation violation is the same arrest warrant defined elsewhere in the Code. In arriving at this conclusion, we remain cognizant that we must "consider the whole text of a statute and interpret each word 'so that no part will be inoperative, superfluous, void or insignificant.'" *Deberry*, 651 S.W.3d at 925 (quoting *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 228 (Tenn. 2010)). Consequently, the phrase must mean something. To determine the meaning, we examine first the plain language of the statute, which authorizes the trial judge "to cause to be issued" "[a] warrant for the arrest of the defendant as in any other criminal case." Tenn. Code Ann. § 40-35-311(a)(1)(A). In this sentence, the subject is "the trial judge," the predicate is "shall have the power to cause to be issued," and the direct object is "a warrant for the arrest of the defendant." The phrase "as in any other criminal case" is a relative clause that modifies the "warrant for the arrest of the defendant," or, in other words, defines the kind of warrant that the trial court can issue, i.e., the same arrest warrant issued in all other criminal cases. Thus, the trial court is authorized to issue an arrest warrant that complies with the statutory requirements for the issuance of arrest warrants. Certainly no language in the revocation statute or in the Code suggests otherwise. *See Deberry*, 651 S.W.3d at 924 (stating that courts "must decide 'how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued'" (quoting Scalia & Garner, *supra*, at 33)); Desai*, supra*, at 203 (stating that "one key to determining when one statute is *in pari materia* with a second should be determining when an objective reader would or should look to that second statute").

That the arrest warrant referred to in the revocation statute is the same as that defined elsewhere in the Code also finds support in our cases discussing the commencement of a revocation proceeding. Early on, our supreme court concluded that the running of the probationary period could be "tolled the same as any other act containing a limitation of power" and that, because a revocation proceeding "is in the nature of a continuation of the original prosecution," that tolling could occur, as in "any criminal prosecution," with "the issuance of a criminal warrant." *McGuire*, 292 S.W.2d at 193. In *Allen*, our supreme court "spoke of a probation revocation proceeding as a criminal prosecution and . . . used criminal cases as a basis for holding that [the running of the probationary period] was tolled by the issuance of a warrant." *Allen*, 505 S.W.2d at 719. Thus, as in other criminal cases, "[p]robation revocation proceedings are commenced when the trial judge issues the warrant; the warrant serves as the formal accusation." *State v. Hutchings*, No. M2008-00814-CCA-R3-CD, 2009 WL 1676057, at *6 (Tenn. Crim. App. June 16, 2009). Both this court and our supreme court have time and again equated the arrest warrant authorized by Code section 40-35-311 with the arrest warrant defined in Code section 40-6-201. *See State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (stating that "the issuance of the warrant commences the revocation proceedings"); *State v. Tankersley*, No. W2005-02901-CCA-R3-CD, 2007 WL 1259212, at *3 (Tenn. Crim. App. Apr. 30, 2007) ("[L]ooking at the unambiguous language of the statute, it appears that the clear intention of the legislature was to require the issuance of a warrant for the arrest of a defendant who has committed a

probation violation in order to initiate the procedure to revoke probation."); *see also, e.g.*, *State v. Clark*, 970 S.W.2d 516, 518 (Tenn. Crim. App. 1998); *State v. McBrien*, No. W2021-00158-CCA-R3-CD, 2022 WL 1025068, at *2 (Tenn. Crim. App. Apr. 6, 2022); *State v. Vaughn*, No. W2011-01707-CCA-R3-CD, 2012 WL 3642728, at *3 (Tenn. Crim. App. Aug. 27, 2012); *State v. Bonds*, No. E2011-01199-CCA-R3-CO, 2012 WL 1956701, at *8 (Tenn. Crim. App. May 31, 2012); *State v. Washington*, No. E2008-00515-CCA-R3-CD, 2009 WL 2263850, at *4 (Tenn. Crim. App. July 29, 2009); *State v. Woods,* No. W2007-02025-CCA-R3-CD, 2008 WL 3983107, at * 4 (Tenn. Crim. App. Aug.28, 2008); *State v. Byrd*, No. E2002-01589-CCA-R3-CD, 2003 WL 21047130, at *1 (Tenn. Crim. App. May 9, 2003); *State v. Adams*, No. C.C.A. 222, 1990 WL 199905, at *2 (Tenn. Crim. App. Dec. 13, 1990). Most recently, we concluded that "Tennessee law requires that probation revocation proceedings be initiated by a formal legal process that satisfies the statutory definition of a warrant, whether titled as a warrant or as another type of order." *Wall*, 2025 WL 1604434, at *4 (quoting Tenn. Code Ann. §§ 40-35-311; 40-6-201).

Accordingly, we can find no support either in the plain language of the statute or the historical treatment of the statute by this court and our supreme court for the conclusions in *Chisam* and *Cousett* that the "arrest warrant" in Code section 40-35-311 is some other kind of arrest warrant that does not have to comply with the statutory rules. *See State v. Moon*, No. M2023-01192-CCA-R3-CD, 2025 WL 1672885, at *12 (Tenn. Crim. App. June 13, 2025) (stating that "the statute equates the issuance of a probation violation warrant to that of an arrest warrant issued in a criminal case"), *perm. app. filed* (Tenn. Aug. 14, 2025). Instead, we are constrained to conclude that, to be valid, a warrant for the arrest of the defendant for a probation violation must satisfy the statutory requirements for the issuance of an arrest warrant.

### D. Tennessee Rules of Criminal Procedure

Our conclusion that a probation violation warrant must satisfy the statutory requirements for the issuance of arrest warrants does not fully answer the question in this case because Defendant's precise challenge was that the warrant was invalid because it did not comply with Tennessee Rules of Criminal Procedure 3 and 4. Thus, we must determine whether those rules apply to the issuance of probation violation warrants.

The rules of criminal procedure did not become effective until 1978 and, thus, could not have applied to the issuance of an arrest warrant when the legislature first authorized the issuance of an arrest warrant for a probation violation. *See* Tenn. R. Crim. P. 59, Advisory Comm'n Cmts.; *see also Tennessean*, 485 S.W.3d at 866. Nevertheless, Rule 1 states that the Tennessee Rules of Criminal Procedure "apply in cases which are clearly criminal in nature, including both misdemeanors and felonies." Tenn. R. Crim. P. 1. The advisory commission comments to Rule 1 explain that "the purpose of the commission was to formulate rules of practice in those state criminal cases presently considered to be state criminal procedures." *Id.*, Advisory Comm'n Cmts. Rule 2 provides that the "rules are

intended to provide for the just determination of every criminal proceeding." Tenn. R. Crim. P. 2. Our analysis above tells us that by the time the rules of procedure went into effect, the courts of this state had been treating probation revocation proceedings as criminal in nature for more than two decades. *See Allen*, 505 S.W.2d at 719; *McGuire*, 292 S.W.2d at 193. In our view, it would be wholly inconsistent to conclude that Rules 3 and 4 do not apply to probation revocation proceedings. Because anytime "a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision," *Lovelace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013), we will compare the language of Rules 3 and 4 to determine whether any specific provision in Code section 40-35-311 takes precedence over the general provisions in the rules.

Tennessee Rule of Criminal Procedure 3 "governs what must be done to secure the issuance of an arrest warrant." Tenn. R. Crim. P. 3, Advisory Comm'n Cmts. Importantly, "a warrant must never be issued as a mere ministerial act done simply upon application." *Id.* "A factually sufficient basis for the probable cause judgment must appear within the affidavit of complaint." *Id.* Rule 3 defines an "affidavit of complaint" as "a statement alleging that a person has committed an offense" and provides that the affidavit of complaint must "(a) be in writing; (b) be made on oath before a magistrate or a neutral and detached court clerk authorized by Rule 4 to make a probable cause determination; and (c) allege the essential facts constituting the offense charged." Tenn. R. Crim. P. 3. The rules commission adopted this nomenclature to differentiate between this process and a civil complaint and "to further emphasize to the one issuing an arrest warrant the necessity for first having in hand a detailed complaint reduced to writing and sworn to." *Id.*, Advisory Comm'n Cmts.

Tennessee Rule of Criminal Procedure Rule 4, which "was substantially derived from the corresponding federal rule and § 40-6-202," provides that the facts supporting a probable cause finding should be stated in "the affidavit of complaint and any supporting affidavits" and that "[b]efore ruling on a request for a warrant, the magistrate or clerk may examine under oath the complainant and any witnesses the complainant produces." Tenn. R. Crim. P. 4(a); *see id.*, Advisory Comm'n Cmts. ("Note that the affidavit of complaint may be buttressed by additional affidavit(s) and that the magistrate or clerk may also examine under oath the complainant and any other witnesses."). The complainant, in this context, is "[s]omeone who, under oath, signs a statement (called a "complaint") establishing reasonable grounds to believe that some named person has committed a crime." *Complainant*, BLACK'S LAW DICTIONARY (12th ed. 2024). An affidavit is "[a] voluntary declaration of facts written down and sworn to by a declarant, usually before an officer authorized to administer oaths." *Affidavit*, BLACK'S LAW DICTIONARY (12th ed. 2024).

The language in Rules 3 and 4 largely mirrors the language in the Code. Code section 40-6-203, like Rules 3 and 4, requires that the magistrate "examine, on oath, the affiant or affiants, reduce the examination to writing, and cause the examination to be

signed by the person making it" before issuing the warrant. Tenn. Code Ann. § 40-6-203(a). Notably, the current version of Code section 40-6-203 specifically requires that in those instances when the examination of the affiant takes place "through the use of electronic audio-visual equipment which allows the affiant and the examining official to both view and hear each other simultaneously," the "affiant shall prepare an affidavit of complaint in conformance with § 40-6-204 and *Rule 3 of the Tennessee Rules of Criminal Procedure*" and transmit the same to the magistrate by facsimile "[p]rior to the examination." Tenn. Code Ann. § 40-6-203(b) (emphasis added). Although Code section 40-35-311 does not specifically refer to affidavits of complaint, it specifically authorizes the issuance of an arrest warrant, which, as discussed more fully above, cannot occur in the absence of a sworn statement, or, said otherwise, an affidavit of complaint. In our view, it would be illogical to conclude that Rule 4 does not apply to the issuance of probation violation warrants.

The only difference we see between the general rules for the issuance of an arrest warrant and Code section 40-35-311 is that only the "trial judge" may issue a probation violation warrant, Tenn. Code Ann. § 40-35-311(a), while general arrest warrants may be issued by the "[c]lerks of courts of general sessions and their duly sworn deputies," Tenn. Code Ann. § 40-6-214. *See Wall*, 2025 WL 1604434, at *4. Accordingly, we conclude that a sworn statement signed by the declarant, regardless of whether the document is titled "affidavit of complaint," is a prerequisite to the issuance of a valid probation violation warrant.

Our ruling is not groundbreaking. It has always been the law that a sworn statement reduced to writing and signed *by the person making it* is a mandatory prerequisite to the issuance of an arrest warrant. We can find nothing to suggest that in authorizing the issuance of an arrest warrant for a probation violation, the legislature intended that a different procedure be followed. Having so concluded, we turn next to the question of whether the probation violation warrant in this case is valid.

*E. The Violation Warrant*

The parties agree, and the record establishes, that the violation of probation affidavit indicates that the named affiant, Stephanie Fox, "personally came" before the trial judge and "being first duly sworn," alleged that Defendant was placed on three years' probation on December 14, 2021. The affidavit further states that the "Affiant," Ms. Fox, "further states" that Defendant materially violated the conditions of his probation. The warrant itself provides that "the affiant above has this day made oath" before the trial judge. However, Ms. Fox did not personally appear before the trial judge so that she could be sworn before presenting the allegations and did not sign the affidavit. Instead, Jeffrey Skeen, whom the trial court described as "the court liaison for TDOC," signed the affidavit. The record does not indicate whether Mr. Skeen was sworn or, indeed, whether he personally appeared before the trial judge.

20

The rules "clearly contemplate that the affidavit of complaint will be made *by the affiant* to the magistrate making the probable cause determination *at the time of the probable cause determination, either in person or via electronic equipment*." *State v. Helbert*, No. E2015-02017-CCA-R9-CD, 2017 WL 956154, at *3 (Tenn. Crim. App. Mar. 10, 2017) (citing *State v. Ferrante*, 269 S.W.3d 908, 913 (2008)) (emphasis added). When the affiant fails to sign the warrant, there is "no sworn statement to support the issuance of a warrant," and consequently, any arrest warrant that follows cannot be valid. *State v. Wilson*, 6 S.W.3d 504, 507 (Tenn. Crim. App. 1998); *see also State v. Burtis*, 664 S.W.2d 305, 308 (Tenn. Crim. App. 1983) (deeming arrest warrant invalid because it "was issued upon the basis of unsworn statements telephoned by the sheriff to the Circuit Court Clerk"). "These rules are mandatory, and the failure to comply with them invalidates the affidavit of complaint and resulting warrant." *Helbert*, 2017 WL 956154, at *3; *see also Jones*, 512 S.W.3d at 264. Because Ms. Fox, the named affiant, did not personally appear before the trial judge, was not sworn by the trial judge, and did not sign the affidavit, the affidavit fails to satisfy the most basic procedural requirements. *See* Tenn. Code Ann. § 40-6-203(a); Tenn. R. Crim. P. 3; 4.

In this case, the trial judge remarked that an arrest warrant could be issued from an affidavit of complaint based on hearsay, which is true. *See* Tenn. Code Ann. § 40-6-205(a); Tenn. R. Crim. P. 4(b). However, when the "finding of probable cause" is "based on evidence, which may be hearsay in whole or in part," there must be "a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." *Id.* "If hearsay evidence is relied upon, the basis for the credibility of both the informant and the informant's information must also appear in the affidavit." *State v. Perez*, No. 03C01-9603-CC-00134, 1998 WL 851470, at *11-12 (Tenn. Crim. App. Dec. 10, 1998). The affiant in this case was Ms. Fox and not Mr. Skeen, and the affidavit does not contain any information to indicate that Mr. Skeen was relaying hearsay information that he obtained from Ms. Fox, much less any information about the credibility of Ms. Fox or her information.

"Under Tennessee law, if a warrant does not meet procedural and constitutional requirements, it is invalid," and "[a] void warrant invalidates *all subsequent proceedings* emanating from the warrant." *Wilson*, 6 S.W.3d at 507 (first citing *Burtis*, 664 S.W.2d 305, and then *State v. Campbell*, 641 S.W.2d 890 (Tenn. 1982)) (emphasis added). "A lawful accusation is an essential jurisdictional element of a criminal trial, without which there can be no valid prosecution." *Ferrante*, 269 S.W.3d at 914 (quoting *State v. Morgan*, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979); and citing *Myers v. State*, 577 S.W.2d 679, 681 (Tenn. Crim. App. 1978)). "No valid conviction can occur if the charging instrument is void." *Wilson*, 6 S.W.3d at 507 (citing *Morgan*, 598 S.W.2d at 797). In probation revocation proceedings, the lawful accusation that commences a revocation proceeding is the issuance of a valid violation warrant. *See Shaffer*, 45 S.W.3d at 555 (holding that "the issuance of the warrant commences the revocation proceedings"); *see also Allen*, 505 S.W.2d at 717-18; *Moon*, 2025 WL 1672885, at *11-12. Because the probation violation

21

affidavit was void, the resulting probation violation warrant was also void and could not have commenced the revocation proceeding in this case. We note that the State was aware of the defect in the warrant as soon as Defendant filed his motion to dismiss and, at that point, could have easily remedied the defect by securing a new warrant. *See Wilson*, 6 S.W.3d at 507 (observing that "the State had a number of options at its disposal" when it realized that arrest warrant was invalid).

Importantly, at this juncture, we note that the issue presented is not whether Defendant received constitutionally sufficient notice, which he arguably did, but whether a valid violation warrant was issued to commence the revocation proceeding. Because it was not, the trial court did not have jurisdiction to entertain the revocation proceeding and erred by denying Defendant's motion to dismiss. *See Tankersley*, No. W2005-02901-CCA-R3-CD, 2007 WL 1259212, at *4 (holding that "the issuance of a warrant was the exclusive charging mechanism for the initiation of a probation revocation proceeding"); *see also Jones*, 512 S.W.3d at 267 (finding that void affidavit of complaint deprived the court of "jurisdiction to convict the Defendant"). Accordingly, the judgment of the trial court revoking Defendant's probation is reversed.

Because no valid violation warrant was issued, Defendant's term of probation continued to run. *See Allen*, 505 S.W.2d at 717. Arguably, Defendant's three-year term of probation imposed in December 2021 has expired. However, the record does not clearly establish this fact, and the parties have not had an opportunity to address this issue. Accordingly, we remand the case to the trial court to determine whether, in the absence of a validly issued probation violation warrant, Defendant's term of probation has expired. *See Wilson*, 6 S.W.3d at 507 (determining that under the facts, "any discussion of whether the State may now reinstitute proceedings against the Defendant [w]as premature").

Because we have concluded that the violation warrant was void, we do not consider Defendant's claim that the trial court abused its discretion by revoking his probation and ordering that he serve the balance of his sentence in confinement.

**Conclusion**

Because the affidavit in support of the violation warrant failed to comply with the statutory and rule-based requirements, the affidavit was void, the violation warrant was void, and the ensuing revocation proceeding was void. Accordingly, the judgment of the trial court is reversed, and the case is remanded to the trial court to determine whether, in the absence of a validly issued probation violation warrant, Defendant's term of probation has expired.

s/ Matthew J. Wilson
_____
MATTHEW J. WILSON, JUDGE